SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Michael Sumulikoski; State of New Jersey v. Artur Sopel** (A-3/4-13) (072957)

**Argued September 24, 2014 -- Decided March 18, 2015**

**PER CURIAM**

In this appeal, the Court considers whether the State can prosecute offenses that occurred in Germany in a New Jersey courtroom.

In February 2011, a group of students from Paramus Catholic High School traveled to Europe as part of a school-sponsored trip. Defendants Michael Sumulikoski and Artur Sopel, who both worked at the school, served as the sole chaperones for a portion of the group that went to Germany. One week after the trip ended, a teacher reported that sexual misconduct had occurred between the chaperones and students during the trip. An investigation revealed that defendants had engaged in multiple acts of sexual misconduct with three seventeen-year-old female students while in Germany.

A Bergen County Grand Jury charged Sumulikoski with three counts of second-degree sexual assault (Counts 2, 3, and 4), one count of second-degree endangering the welfare of a child by engaging in sexual contact (Count 1), and two counts of second-degree endangering the welfare of a child by allowing Sopel to perform unlawful acts in the victim's presence (Counts 5 and 6). The Grand Jury charged Sopel with six counts of second-degree sexual assault (Counts 8, 9, and 13 through 16) and two counts of second-degree endangering the welfare of a child by engaging in sexual contact (Counts 7 and 12). Sopel also is charged with several additional offenses that are not part of this appeal, including one count of endangering and six counts of sexual assault relating to acts from 2010 involving another seventeen-year-old victim (Counts 19-25), two counts of witness tampering (Counts 10 and 17), and two counts of endangering the welfare of a child with respect to the witness tampering (Counts 11 and 18).

Defendants moved to dismiss the sexual assault and endangerment charges involving conduct in Germany, asserting that the State lacked territorial jurisdiction to prosecute the offenses in New Jersey. The trial court denied the motions, focusing on N.J.S.A. 2C:1-3(a)(1), which allows for jurisdiction in New Jersey when "[e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State." The court concluded that material elements of both offenses – having "supervisory or disciplinary power" over a victim (sexual assault), and "assuming the responsibility for the care of a child" (endangerment) – occurred in New Jersey and constitute "conduct" sufficient to establish territorial jurisdiction.

Defendants appealed, and the Appellate Division affirmed substantially for the reasons set forth by the trial court. The panel reasoned that the fact that some material elements of the offenses occurred in Germany does not deprive the State of territorial jurisdiction since the "foundational elements" occurred in New Jersey. Moreover, the panel found that there was a factual nexus between the crimes and New Jersey because the children were entrusted to defendants' care here, a legal obligation which ended upon their return.

Defendants moved for leave to appeal, and the State joined in the request. This Court granted the motions. 215 N.J. 481 (2013).

**HELD:** Under existing statutory law, a basis for territorial jurisdiction is established when "conduct" that is an element of an offense occurs in New Jersey. In this case, there is no basis for territorial jurisdiction in New Jersey because the elements of the charged crimes that related to defendants' conduct occurred entirely overseas.

1. In order for the State to prosecute a crime in New Jersey, there must be territorial jurisdiction. At common law, the requirement for territorial jurisdiction meant that a state could prosecute only those crimes committed within its territorial borders, but this notion has relaxed over time. It has now become common for states to invoke jurisdiction whenever any act pertaining to an offense occurs or takes effect within the forum state. Similarly, the "effects doctrine" provides another basis for jurisdiction, allowing a state to prosecute a crime when criminal acts

done outside its jurisdiction are intended to produce, or do produce, detrimental effects within it. In New Jersey, courts have broadly interpreted the statute on territorial jurisdiction, N.J.S.A. 2C:1-3, to apply to offenses committed partly outside of the State so long as there is a direct nexus to New Jersey. (pp. 11-12)

2. The focus in this case is on N.J.S.A. 2C:1-3(a)(1), which allows for territorial jurisdiction in a criminal case when "[e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State." In order to meet this requirement, the State must offer proof of conduct or result without reliance on relevant attendant circumstances. A defendant's status, including his or her legal rights, duties, liabilities, and other legal relations, cannot alone provide a basis for jurisdiction. For example, in bigamy cases where the second marriage occurred outside of the state that is seeking to assert jurisdiction, courts have repeatedly found that the first marriage only establishes the defendant's status as a married person and does not provide a basis for territorial jurisdiction. (pp. 13-18)

3. Here, the indictment alleges multiple violations of the sexual assault statute, N.J.S.A. 2C:14-2, which requires the State to prove several elements beyond a reasonable doubt, including the victim's age, and that an act of sexual penetration occurred. Since age is a status that cannot afford jurisdiction, and all of the acts of sexual misconduct allegedly occurred in Germany, the State attempts to establish territorial jurisdiction through an element of the offense requiring that the defendant had "supervisory or disciplinary power of any nature or in any capacity over the victim." N.J.S.A. 2C:14-2(c)(3)(b). However, that element does not describe conduct or an affirmative act. Rather, it describes a person's status - the nature and accompanying duties of a relationship - which cannot provide a basis for jurisdiction under N.J.S.A. 2C:1-3(a). Where, as here, all of the elements of an offense that relate to conduct took place outside of the State's borders, jurisdiction lies elsewhere. Thus, the State lacks authority in this matter to prosecute the alleged acts of sexual assault in New Jersey. (pp. 18-20)

4. The indictment also alleges multiple violations of the endangering statute, N.J.S.A. 2C:24-4(a)(1). As with the sexual assault statute, several elements of the endangering statute cannot support territorial jurisdiction, including the victim's status as a child and the fact that all of the alleged acts of sexual conduct occurred overseas. Thus, the State's focus is on that element of the offense requiring that the defendant either had a "legal duty" for the child's care or had "assumed" that responsibility. While "having a legal duty" describes a status that cannot provide a basis for territorial jurisdiction, the second clause of this element presents a closer question in light of how it is phrased. Specifically, it is addressed to any person "who has assumed responsibility for the care of a child," which can be read to mean that a person has engaged in conduct to take on a responsibility. However, the same is true of marriage where the affirmative steps that provide a legal status do not amount to conduct providing a basis for territorial jurisdiction. Reading the statute broadly in order to suggest that a person who takes on the status of a chaperone has engaged in conduct raises significant due process concerns and could sweep in behavior that is attenuated, if not completely divorced, from any criminal conduct. To the extent that there is an unresolved ambiguity in the statute, the rule of lenity also cautions against reading the law against defendants. Thus, the element of assumption of responsibility does not support territorial jurisdiction over the endangering charges in question. (pp. 20-26)

5. The Court recognizes that the outcome here may be unsettling. However, it is driven by existing statutory law, which requires that "conduct" that is an element of the offense occur in New Jersey. Although the Legislature may consider amending the law, nothing in the sexual assault or endangering statutes as currently written suggests that those laws were intended to apply to conduct by a teacher/chaperone, outside of this State, directed against a student in the person's care, in a manner that comports with due process. (pp. 26-27)

The judgment of the Appellate Division is **REVERSED**, Counts 1 through 9, and 12 through 16 of the indictment are **DISMISSED**, and the matter is **REMANDED** to the trial court for further proceedings on the remaining charges, Counts 10, 11, and 17 through 25.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in this PER CURIAM opinion. JUSTICE ALBIN did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

MICHAEL SUMULIKOSKI,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

ARTUR SOPEL,

    Defendant-Appellant.

        Argued September 24, 2014 – Decided March 18, 2015

        On appeal from the Superior Court, Appellate Division.

        Philip A. De Vencentes argued the cause for appellant Michael Sumulikoski (Galantucci & Patuto, attorneys).

        Alan L. Zegas argued the cause for appellant Artur Sopel (Law Offices of Alan L. Zegas and Flood & Basile, attorneys; Mr. Zegas, Raymond F. Flood, and Terel L. Klein, on the brief).

        David A. Malfitano, Assistant Prosecutor, argued the cause for respondent (John L. Molinelli, Bergen County Prosecutor, attorney; Mr. Malfitano and Kenneth M.

Ralph, Senior Assistant Prosecutor, on the letter briefs).

Brian J. Uzdavinis, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (John J. Hoffman, Acting Attorney General, attorney).

PER CURIAM

This case involves the prosecution of a permanent substitute teacher and a school administrator who chaperoned a group of high school students on an overseas class trip. Defendants allegedly sexually assaulted three 17-year-old female students during the trip, and the Bergen County Prosecutor's Office indicted defendants for multiple counts of sexual assault and endangering the welfare of a child.

All of the acts of misconduct allegedly occurred in Germany. Neither the indictment nor the record suggests that defendants planned or committed acts of sexual assault or endangering in New Jersey. Defendants accordingly moved to dismiss the charges on the ground that the State cannot establish territorial jurisdiction to proceed here.

At the core of this appeal is this basic question: whether the State can prosecute offenses that occurred in Germany in a New Jersey courtroom. The State's authority is limited by existing statutes and due process concerns. It has the power to prosecute crimes that occurred here either in whole or in part; but to establish territorial jurisdiction in a case like this,

some "conduct" that is an element of the offense must take place in New Jersey. See N.J.S.A. 2C:1-3(a)(1). The issue presented thus turns on whether two elements of the crimes charged -- having "supervisory or disciplinary power" over the victims and "assum[ing] responsibility for the care of a child" -- constitute "conduct" that satisfies the jurisdictional requirement. Because the elements instead relate to defendants' status as chaperones, and not their conduct, there is no basis for territorial jurisdiction in New Jersey under existing law.

For reasons that follow, we have no choice but to reverse the judgment of the Appellate Division and dismiss a number of counts in the indictment. The case may proceed on counts relating to witness tampering and a separate series of allegations of sexual assault against a victim in New Jersey.

I.

The record at this stage is limited. The following information is drawn largely from the indictment and testimony before the grand jury.

From February 17 to 27, 2011, a group of students from Paramus Catholic High School traveled to Europe as part of a school-sponsored trip. The students visited Amsterdam and Belgium together and then split into two groups; most traveled on to France, and seventeen students went to Germany.

3

Defendants Michael Sumulikoski and Artur Sopel were the only chaperones who accompanied the group to Germany. Both worked at Paramus Catholic High School. Sumulikoski, who was twenty-eight years old at the time, was a permanent substitute teacher and an athletic coach. Sopel, then age thirty-one, was the vice president of operations. Both agreed to serve as chaperones. At oral argument, the State represented in general that both had conversations and signed documents that spelled out their responsibilities as chaperones.

A week after the trip ended, a teacher contacted the Division of Youth and Family Services[1] and reported that sexual misconduct had occurred between the chaperones and students during the trip. An investigation followed. It uncovered evidence that the chaperones engaged in acts of sexual misconduct with three seventeen-year-old students, Jill, Kate, and Anne. (We use pseudonyms to protect the identity of the victims, who were underage at the time.)

Each of the victims spoke with a sergeant from the prosecutor's office on one or more occasions. They recounted a number of events that took place during the trip. We focus briefly on the acts of sexual misconduct in Germany, which form

---

[1]  Effective June 29, 2012, the Division of Youth and Family Services was renamed the Division of Child Protection and Permanency. L. 2012, c. 16, § 20.

4

the basis for the indictment. Jill stated that she and Sumulikoski performed oral sex on each other and had sexual intercourse. Kate recounted that Sopel inserted his finger into her vagina and had sexual intercourse with her. Anne stated that Sopel put his finger in her vagina and had sexual intercourse with her on two different occasions. Jill and Kate also relayed that Sopel spoke with each of them about what to say to the authorities.

A Bergen County Grand Jury indicted defendants on December 21, 2011. Sumulikoski stands charged with three counts of sexual assault in the second-degree, N.J.S.A. 2C:14-2(c)(3)(b) (Counts 2, 3, and 4, relating to Jill); one count of endangering the welfare of a child (Jill) in the second-degree by engaging in sexual contact, N.J.S.A. 2C:24-4(a) (Count 1); and two counts of endangering the welfare of a child in the second-degree by allowing Sopel to perform unlawful acts in the presence of the victim (Kate and Anne, respectively), N.J.S.A. 2C:24-4(a) (Counts 5 and 6).

Sopel is charged in nineteen counts, eight of which are relevant to this appeal. Specifically, Sopel is accused of six counts of sexual assault in the second-degree, N.J.S.A. 2C:14-2(c)(3)(b) (Counts 8 and 9, relating to Kate, and Counts 13, 14, 15, and 16, relating to Anne); and two counts of endangering the welfare of a child in the second-degree by engaging in sexual

5

contact, N.J.S.A. 2C:24-4(a) (Count 7, relating to Kate, and Count 12, relating to Anne).

Sopel is also charged with one count of endangering and six counts of sexual assault relating to acts in 2010 which involve another seventeen-year-old victim (Counts 19 through 25); two counts of witness tampering (Counts 10 and 17, relating to Kate and Anne, respectively); and two counts of endangering the welfare of a child, which are connected to the witness tampering charges (Counts 11 and 18, relating to Kate and Anne, respectively). The indictment alleges that these eleven offenses were committed only in Bergen County, and defendants do not argue that the charges cannot proceed in New Jersey. They are not part of this appeal.

Defendants moved to dismiss the sexual assault and endangerment charges that involve conduct in Germany. They asserted that the State lacked territorial jurisdiction to prosecute the offenses here. In a detailed, written opinion, the trial court denied the motions. The trial judge reviewed the evolution of the concept of territorial jurisdiction and focused in particular on N.J.S.A. 2C:1-3(a)(1). That section allows for jurisdiction in New Jersey when "[e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State."

The court concluded that elements of both offenses -- having "supervisory or disciplinary power" over a victim (under the sexual assault statute), and "assuming the responsibility for the care of a child" (under the endangerment statute) -- constitute "conduct" that is a "material element of the offenses charged." The trial court distinguished case law that limits where a bigamy prosecution may be brought; the court observed that "the status of a teacher," unlike the status of a married person, "presupposes conduct." As a result, the trial judge concluded that territorial jurisdiction for the offenses could be found in New Jersey.

In an unpublished opinion, the Appellate Division affirmed substantially for the reasons set forth by the trial judge. It noted that because the above "foundational elements" occurred in New Jersey, "the fact that additional material elements of the offenses occurred in Germany does not deprive the State of territorial jurisdiction to prosecute the offenses." In addition, the panel found that "[t]his case bears a factual nexus between the crimes and New Jersey, namely, that parents entrusted their children to defendants in this state, and that legal obligation ended upon their return to New Jersey."

Each defendant filed a motion for leave to appeal, and the State joined in the request. We granted the motions. 215 N.J.

7

481 (2013).  We also granted the Attorney General's motion for leave to appear as amicus curiae.

II.

Sumulikoski argues that he cannot be compelled to stand trial in New Jersey for a crime allegedly committed in a foreign country.  He claims that all of the alleged acts of conduct in this case took place in Germany, and that there is no evidence of a conspiracy or any preparatory act or attempt that occurred in New Jersey.  As a result, he argues that there is no territorial jurisdiction to proceed here.

Sumulikoski maintains that having "supervisory or disciplinary power" over the victim and "having assumed the responsibility for the care of a child" are facts or circumstances that define a relationship, but not "conduct."  As a result, he contends that the elements cannot provide a basis for territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1). Sumulikoski submits that the statute confers jurisdiction upon New Jersey only when prohibited conduct or results occur here. Even if the elements were considered conduct, he contends that they could not confer jurisdiction unless they were accompanied by a culpable mental state.  Sumulikoski also argues that to extend jurisdiction in this case would implicate due process concerns under the Federal and State Constitutions.

8

Sopel advances similar arguments. He stresses that to try him in New Jersey for conduct that occurred in Germany would upend an established body of law and violate his constitutional due process rights. He argues that a duty of care that arises from a person's supervisory role or assumption of responsibility is not conduct; it is a status or circumstance that cannot provide a jurisdictional tie under N.J.S.A. 2C:1-3(a). Sopel contends that it is not enough for an element of an offense to occur within this state. For New Jersey to have criminal jurisdiction, he asserts that some forbidden act of conduct must have occurred here. In this case, Sopel argues that because all of the alleged forbidden conduct took place in Germany, New Jersey lacks territorial jurisdiction. To the extent that N.J.S.A. 2C:1-3(a) might be read otherwise, he submits that the statute must be strictly construed against the State. Sopel also claims that the statute provides no notice that individuals may be prosecuted in New Jersey for conduct committed abroad.

The State argues that the most important factor to assess jurisdiction "is the fact that the assumption of the duty to properly supervise the children by both defendants occurred in New Jersey and never terminated until all parties returned from Europe." Without that assumption of duty, the State argues, no crime would have occurred. The State maintains that "the relationship of teacher and student, which creates the duty, was

unambiguously established in New Jersey" and did not exist before defendants voluntarily agreed to serve as chaperones. The State asserts that, to assume that duty, defendants signed documents and had conversations about their responsibilities before the trip started. Because "the most important element of the crimes" occurred in New Jersey, the State contends, it is irrelevant that "the actual sexual relations" took place abroad. As a result, the State maintains that jurisdiction is proper here.

The Attorney General, as amicus, also argues that defendants are subject to prosecution in New Jersey because of "their affirmative acts of assuming responsibility in this State for the supervision and care" of victims during the trip. According to the Attorney General, that assumption of responsibility "plainly amounts to 'conduct' that supports a finding of jurisdiction." The Attorney General submits that "forbidden conduct" in New Jersey is not required to confer jurisdiction; instead, defendants need only have intended to become chaperones while in New Jersey. Because defendants "actively and voluntarily embraced" their supervisory roles in New Jersey, the Attorney General maintains that they can be prosecuted here.

                                III.

     There must be territorial jurisdiction in New Jersey for

the State to prosecute a crime here.  State v. Denofa, 187 N.J.

24, 36 (2006).  The State has the power to prosecute crimes that

occurred within its borders but may not bring charges for

offenses committed entirely in another state or country.  Ibid.

If the commission of an offense spans jurisdictional boundaries,

more than one jurisdiction may prosecute the crime.  Heath v.

Alabama, 474 U.S. 82, 93, 106 S. Ct. 433, 440, 88 L. Ed. 2d 387,

397 (1985).

     At common law, a state could prosecute only those crimes

committed within its territorial borders.  See Model Penal Code

and Commentaries, comment 1 on § 1.03, at 36 (1980); see also 2

Final Report of the New Jersey Criminal Law Revision Commission,

comment on § 2C:1-3, at 7 (1971) (noting "the completed act" had

to occur in New Jersey to allow for prosecution here).  The

notion of strict territoriality relaxed over time, and it has

become common for state courts to invoke jurisdiction "whenever

any act pertaining to the criminal transaction occurs or takes

effect within the forum state, even [if] the major activity took

place elsewhere."  B. J. George, Jr., Extraterritorial

Application of Penal Legislation, 64 Mich. L. Rev. 609, 622

(1966).  The "effects doctrine," first articulated by Justice

Oliver Wendell Holmes, affords another basis for jurisdiction:

                                 11

"Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, [can] justify a State in punishing the cause of the harm. . . ." Strassheim v. Daily, 221 U.S. 280, 285, 31 S. Ct. 558, 560, 55 L. Ed. 735, 738 (1911) (citations omitted).

In 1962, the Model Penal Code incorporated these more expansive interpretations of territorial jurisdiction. It identified six bases for jurisdiction that extended beyond traditional territorial boundaries. See Model Penal Code, § 1.03 & comment 1, 35-37 (1962). The Legislature codified those provisions at N.J.S.A. 2C:1-3 when it enacted the Code of Criminal Justice in 1978. See Denofa, supra, 187 N.J. at 38 n.7 ("Our statutory construction for territorial jurisdiction follows the Model Penal Code."); State v. Bragg, 295 N.J. Super. 459, 464 (App. Div. 1996) (citing N.J.S.A. 2C:1-3 and noting that "the law of jurisdiction was substantially modified"). Since then, courts have "broadly interpreted" New Jersey's statute on territorial jurisdiction to apply "to offenses committed partly outside of the State." State v. Streater, 233 N.J. Super. 537, 543 (App. Div.) (citations omitted), certif. denied, 117 N.J. 667 (1989). As the language of N.J.S.A. 2C:1-3 makes clear, though, the various methods that allow for jurisdiction in a criminal case all require a direct nexus to New Jersey.

12

The statute provides in part as follows:

a. Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(1) Either the conduct which is an element of the offense or the result which is such an element occurs within this State;

(2) Conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit a crime within the State;

(3) Conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State;

(4) Conduct occurring within the State establishes complicity in the commission of, or an attempt, or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this State;

(5) The offense consists of the omission to perform a legal duty imposed by the law of this State with respect to domicile, residence or a relationship to a person, thing or transaction in the State; or

(6) The offense is based on a statute of this State which expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest.

[N.J.S.A. 2C:1-3(a).]

The State now relies on subsection (1) to assert jurisdiction.[2] In particular, the focus in this case is on the language, "conduct which is an element of the offense [that] occurs within this State."

The criminal code defines "conduct" as "an action or omission and its accompanying state of mind, or, where relevant, a series of acts and omissions." N.J.S.A. 2C:1-14(d). By contrast, the code defines an "element of an offense" more broadly as

> (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as
>
> (a) Is included in the description of the forbidden conduct in the definition of the offense. . . .
>
> [N.J.S.A. 2C:1-14(h).]

In short, then, to meet the requirement of territorial jurisdiction, the State must offer proof of "conduct" or "result," as defined in N.J.S.A. 2C:1-3, but cannot rely on relevant attendant circumstances.

Under the statute, a defendant's status alone does not provide a basis for jurisdiction. "Status" is defined as "[a]

---

[2] The trial court rejected the State's argument that subsection (5) and N.J.S.A. 2C:1-3(g) also conferred jurisdiction. The State did not appeal those determinations.

person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations." Black's Law Dictionary 1542 (9th ed. 2009). Parents or guardians, for example, have a legal duty to care for a child by virtue of their status. See, e.g., D.W. v. R.W., 212 N.J. 232, 246 (2012).

A number of cases have examined those principles in the context of a prosecution for bigamy. In State v. Ishaque, for example, the defendant was married in a civil ceremony in New Jersey. 312 N.J. Super. 207, 208 (Law Div. 1997). Three years later, he traveled to Pakistan and married someone else there. Ibid. Upon his return to New Jersey, he was charged with bigamy. Ibid.

Under N.J.S.A. 2C:24-1(a), "[a] married person is guilty of bigamy . . . if he contracts or purports to contract another marriage." The court dismissed that charge for lack of territorial jurisdiction after it analyzed N.J.S.A. 2C:1-3. The court reasoned that "the act or the conduct constituting the offense of bigamy" took place only in Pakistan. Id. at 211 (emphasis added). Defendant's marital status, an element of the offense that had been established in New Jersey, did not afford a basis for jurisdiction. The court also noted that New Jersey's bigamy statute does not "expressly prohibit[] (such) conduct (when it occurs) outside" New Jersey. Id. at 212

(quoting N.J.S.A. 2C:1-3(a)(6)) (brackets added). "Nothing" in the code, the court explained, "suggests the Legislature intended to make a bigamous marriage contracted outside New Jersey an offense against the laws of this state, nor to expand the jurisdiction of this state's courts to prosecute one for committing bigamy elsewhere." Ibid.

Commonwealth v. Seiders, 11 A.3d 495 (Pa. Super. Ct. 2010), reached a similar result when it dismissed a bigamy charge for lack of jurisdiction. The appellate court explained that "[o]f bigamy's two elements, the first element, being married, is an attendant circumstance or accompanying fact of the actor's being; it is not conduct." Id. at 499. As a result, the element could not confer jurisdiction when a second marriage occurred outside the state.

In both cases, to be sure, defendants initially took affirmative steps to get married. They not only decided to marry a partner but also applied for a marriage license and participated in a ceremony in the first state. Yet those acts did not constitute conduct under the bigamy statute; they instead established each defendant's status as a "married person" under the law. That status alone does not permit the state where the first marriage took place to invoke territorial jurisdiction and prosecute a bigamy charge.

16

Likewise, for the purposes of an escape statute, the requirement that a defendant be a convicted felon "does not describe 'conduct'" but instead "describes a status." State v. Wagner, 596 N.W.2d 83, 86 (Iowa 1999). An Iowa inmate who escaped from custody while outside the state could therefore not be prosecuted for escape in Iowa. Id. at 88.

State v. Sanders, 230 N.J. Super. 233 (App. Div. 1989), also helps illustrate the important distinction between conduct and status. In that case, the defendant was prosecuted for endangering the welfare of a child and child abuse after she boarded a bus in Atlantic City with her two-day-old baby. Id. at 235. She later abandoned the child in a bus station in Pennsylvania. Ibid. At her guilty plea, the defendant admitted that she left New Jersey by bus for the express purpose of abandoning her child in Philadelphia. Ibid.

The Appellate Division found that the defendant's factual basis was sufficient to support both the guilty plea and jurisdiction in New Jersey. Ibid. The panel noted but did not rely on the defendant's legal duty for the care of her child to find jurisdiction. Id. at 237. Instead, the panel found that defendant "took a substantial step in this state" toward neglecting the child. Ibid. That conduct, the court concluded, established an attempt to endanger in New Jersey. Ibid. Once

17

again, a court looked to a defendant's conduct -- and not status or other circumstances -- to sustain territorial jurisdiction.

IV.

Defendants properly brought their motion to dismiss based on territorial jurisdiction early in the proceedings.  See Denofa, supra, 187 N.J. at 43.  To assess their claims, we consider the above principles in light of the specific charges of sexual assault and endangering.

A.

Sexual Assault

The indictment alleges multiple violations of N.J.S.A. 2C:14-2, which provides in part as follows:

> c.  An actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
>
> . . . .
>
> (3)  The victim is at least 16 but less than 18 years old and:
>
> . . . .
>
> (b)  The actor has supervisory or disciplinary power of any nature or in any capacity over the victim.
>
> [N.J.S.A. 2C:14-2(c)(3)(b).]

To convict a defendant under N.J.S.A. 2C:14-2(c)(3)(b), the State must prove the following elements beyond a reasonable doubt:

18

(1) defendant committed an act of sexual penetration with the victim;

(2) at the time of the penetration, the victim was at least sixteen years old but less than eighteen years old;

(3) defendant had supervisory or disciplinary power of any nature or in any capacity over the victim; and

(4) defendant acted knowingly.

See N.J.S.A. 2C:14-2(c)(3)(b); see also Model Jury Charge (Criminal), "Sexual Assault, Victim At Least 16 But Less Than 18 (N.J.S.A. 2C:14-2(c)(3))" (Mar. 10, 2008).

The State relies on the third element to establish jurisdiction: "the actor has supervisory or disciplinary power of any nature or in any capacity over the victim." N.J.S.A. 2C:14-2(c)(3)(b). The element, though, does not describe conduct or an affirmative act; it describes a person's status -- the nature and accompanying duties of a relationship. Because status or "attendant circumstances" cannot provide a basis for jurisdiction under N.J.S.A. 2C:1-3(a), the third element standing alone cannot afford jurisdiction.

For that reason, the allegations in this case do not support territorial jurisdiction for sexual assault. The victim's age is a circumstance or status that cannot afford jurisdiction. In addition, all of the acts of sexual misconduct allegedly occurred in Germany; the State does not allege that

19

defendants took any preparatory steps in that regard in New Jersey. To establish jurisdiction, the State instead relies solely on the fact that defendants had supervisory or disciplinary power over the students -- a circumstance or status that does not satisfy the territorial jurisdiction statute.

When, as here, all of the elements of an offense that relate to conduct took place outside the State's borders, jurisdiction lies elsewhere -- in the state or country where the conduct occurred. See N.J.S.A. 2C:1-3(a). Under the statute, therefore, the State lacks authority in this matter to prosecute the alleged acts of sexual assault in New Jersey.

B.

Endangering

The indictment also alleges multiple violations of N.J.S.A. 2C:24-4(a)(1), which provides that "[a]ny person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree."

The endangering statute applies broadly to a variety of relationships. It of course extends to a "violation of the duty that a parent owes to a child." State v. Miller, 108 N.J. 112, 118-19 (1987); see also Model Penal Code, supra, comment 1 on §

230.4, at 444 (endangering welfare of children "enforces the special duties that adults have toward children").

The plain language of the statute encompasses other relationships as well. Borrowing concepts from Title 9, this Court has observed that the child endangerment statute applies "to a person who has 'assumed the care of a child' or is 'living with the child' or has a 'general right to exercise continuing control and authority over' the child." State v. Galloway, 133 N.J. 631, 659 (1993).[3] The assumption of responsibility in question can be formal or informal; it can be based on custody situations and less-structured relations. Id. at 661. Depending on the circumstances, the statute can also apply to the relationship between a teacher or high school athletic coach and a student. See, e.g., State v. McInerney, 428 N.J. Super. 432, 434, 441-44 (App. Div. 2012).

Furthermore, the profound harm that can be inflicted on a child by one who holds a position of trust is what propels the offense of endangering from a third- to a second-degree offense. See N.J.S.A. 2C:24-4(a)(1); Galloway, supra, 133 N.J. at 661.

_____

[3] Galloway addressed a related part of the endangering statute, N.J.S.A. 2C:24-4(a)(2). The case distinguished between those who assume "a general and ongoing responsibility" for the supervision and care of a child and others who assume "only temporary, brief, or occasional caretaking functions." Galloway, supra, 133 N.J. at 661.

The State must prove the following elements beyond a reasonable doubt to convict a person of second-degree endangerment:

(1)  the victim was a child;

(2)  defendant knowingly engaged in sexual conduct, which would impair or debauch the morals of a child; and

(3)  defendant (a) had a legal duty for the care of the child or (b) had assumed responsibility for the care of the child.

See N.J.S.A. 2C:24-4(a)(1); see also Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Sexual Conduct (Second Degree) (N.J.S.A. 2C:24-4(a)(1))" (Apr. 7, 2014).

Once again, the victim's status as a child cannot support territorial jurisdiction, and all of the alleged acts of sexual conduct occurred entirely overseas.  Our focus is therefore on the third element.  It encompasses two related categories: individuals "having a legal duty" for the care of a child, and others who have "assumed" that responsibility.  The State must only prove one of those facts; in this case, it asserts jurisdiction based on the latter -- defendants' assumption of responsibility for the care of the students.

Both phrases, however, raise the same concerns that the sexual assault statute did.  "Having a legal duty" -- like having "supervisory or disciplinary power" -- describes a

22

defendant's status, but not his conduct. It is an attendant circumstance that does not provide a basis for territorial jurisdiction. See N.J.S.A. 2C:1-3(a)(1); N.J.S.A. 2C:1-14(d), -14(h).

The second clause of the third element presents a closer question because of how it is phrased: It is addressed to any person "who has assumed responsibility for the care of a child." N.J.S.A. 2C:24-4(a)(1) (emphasis added). The phrase refers to a status that a person has taken on, and status cannot support territorial jurisdiction.

The language, however, can also be read to mean that a person has acted affirmatively to take on a responsibility -- in other words, that he has engaged in conduct. But the same is true when a person gets married. He or she takes steps that provide a certain legal status. Those steps, though, do not amount to conduct that can provide a basis for territorial jurisdiction. See Ishaque, supra, 312 N.J. Super. at 211; Seiders, supra, 11 A.3d at 499. Likewise, teachers who assume responsibility as chaperones take on a certain status that carries important obligations, but that status cannot sustain territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1).

A broader reading of the statute -- that a person who takes on the status of a chaperone has engaged in conduct -- raises a number of concerns. Among them are the due process claims that

defendants have asserted. Nothing in the endangering statute expressly suggests that defendants could be prosecuted in New Jersey for conduct that took place in a foreign country. Cf. N.J.S.A. 2C:1-3(a)(6). As a result, defendants argue they lacked notice that they could be prosecuted in New Jersey for crimes committed overseas.

The extraterritorial application of state criminal law is subject to due process analysis. See, e.g., Lea Brilmayer & Charles Norchi, Federal Extraterritoriality and Fifth Amendment Due Process, 105 Harv. L. Rev. 1217, 1219-20 (1992). The essential inquiry in any due process analysis is what "fundamental fairness" requires. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 24-25, 101 S. Ct. 2153, 2158, 68 L. Ed. 2d 640, 648 (1981); see also Model Penal Code, supra, comment 1 on § 1.03, at 40 ("[A] state should have jurisdiction over those whose conduct affects persons in the state or an interest of the state, provided that it is not unjust under the circumstances to subject the defendant to the laws of the state."); United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990), cert. denied, 498 U.S. 1047, 111 S. Ct. 753, 112 L. Ed. 2d 773 (1991) ("We require Congress make clear its intent to give extraterritorial effect to its statutes. . . . In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus

24

between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." (internal citations omitted)).

Here, the State does not allege that defendants committed any acts in New Jersey to prepare for crimes in Germany, formed any culpable intent while in New Jersey, or took any steps in New Jersey in furtherance of a scheme to commit sexual assault or endangering while abroad. Cf. Sanders, supra, 230 N.J. Super. at 237. Nor did the grand jury hear any such evidence. Under the State's reading of the statute, a defendant's assumption of responsibility could sweep in behavior that is attenuated, if not completely divorced, from any criminal conduct. The behavior could be both innocent and far removed in time. Although the State, to its credit, has asked for a narrow ruling tied to the facts of this case, it is difficult to articulate a limiting principle that would cabin in the expansive concept of territorial jurisdiction proposed, which invites due process concerns.

To the extent that there is an unresolved ambiguity in the language of the endangering statute, the rule of lenity also cautions against reading the law against a defendant. See State v. Regis, 208 N.J. 439, 451-52 (2011) ("The rule of lenity derives from the principle that '[n]o one shall be punished for a crime unless both that crime and its punishment are clearly

25

set forth in positive law.'" (quoting In re DeMarco, 83 N.J. 25, 36 (1980))).

For those reasons, the element of assumption of responsibility, coupled with the allegations in this case, do not support territorial jurisdiction over the endangering charges in question.

V.

We recognize that the outcome here may be unsettling. It is troubling to think that a teacher responsible for the care of young adults can sexually assault them on a school trip abroad and not be subject to prosecution in our State. That outcome, though, is driven by existing statutory law, which requires that "conduct" that is an element of the offense occur here. See N.J.S.A. 2C:1-3.

The Legislature may consider amending the law. As noted earlier, N.J.S.A. 2C:1-3(a)(6) provides that territorial jurisdiction may also be found for an offense "based on a statute of this State which expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest." See 2 Final Report, supra, comment on § 2C:1-3, at 8; Model Penal Code, supra, comment 6 on § 1.03, at 54-56; see also 4 Wayne R. LaFave, Criminal Procedure § 16.4(c), at 856-57 (noting limits

of territorial jurisdiction when conduct occurs outside state's borders).  Nothing in the sexual assault or endangering statutes expressly suggests that those laws were intended to apply to conduct by a teacher/chaperone, outside of this State, directed against a student in the person's care, in a manner that comports with due process.

For the reasons set forth above, we are required to reverse the judgment of the Appellate Division.  We dismiss Counts 1 through 9, and 12 through 16.  We remand for further proceedings on the remaining charges, Counts 10, 11, and 17 through 25.

CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON, and JUDGE CUFF (temporarily assigned) join in this opinion.  JUSTICE ALBIN did not participate.

SUPREME COURT OF NEW JERSEY

NO.     A-3/4             SEPTEMBER TERM 2013

ON APPEAL FROM     Appellate Division, Superior Court

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

            v.

MICHAEL SUMULIKOSKI,

      Defendant-Appellant.

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

            v.

ARTUR SOPEL,

      Defendant-Appellant.

DECIDED                  March 18, 2015

              Chief Justice Rabner        PRESIDING

OPINION BY     Per Curiam

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | ----------------------- | ---------------------- |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| | 6 | |

1