# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1810-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.E.D.,

    Defendant-Appellant.

_____

Submitted May 2, 2017 — Decided July 7, 2017

Before Judges Koblitz, Rothstadt and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 12-04-0882.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Joseph D. Coronato, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; Roberta DiBiase, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Defendant M.E.D.[1] was convicted of crimes connected with sexual assaults against her younger sister, K.B. Defendant was indicted with D.C., her boyfriend at the time of the assaults. She was sentenced to an aggregate term of fifteen years in prison with an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. After considering the issues raised on appeal, we affirm defendant's convictions but remand for resentencing and a hearing regarding the monetary sanction.

K.B. testified to the following facts at trial. At the time of trial, she was fifteen years old. In the summer of 2010, she was twelve years old and lived with her "surrogate grandmother" in Jackson. Two years earlier, K.B. had lived with defendant, who was about fourteen years older, in defendant's apartment in Lakewood for almost a year. K.B. visited defendant "on weekends, usually every other week" and sometimes after school during the week. Every few weeks during the summer, K.B. stayed with defendant "for a week or two."

While visiting defendant, K.B. met D.C., defendant's thirty-year-old boyfriend. In K.B.'s presence, D.C. suggested defendant teach K.B. how to engage in safe sex so that K.B. could "have an

---

[1] We use initials to preserve the confidentiality of the victim. R. 1:38-3(c)(12).

outlet with them." "[Defendant] was very agreeable with what [D.C.] had suggested." Defendant and D.C. told K.B. that she was not allowed to tell anyone about their sexual encounters or "they wouldn't love [her] anymore, wouldn't talk to [her], [and] they'd say things to [her] mother to get [her] in trouble."

K.B. had joint sexual encounters with D.C. and defendant on three occasions in the summer of 2010 at defendant's apartment in Lakewood. During the first encounter, D.C. and defendant engaged in sexual intercourse on the bed while K.B. sat in a chair facing the bed and watched. D.C. and defendant instructed K.B. to take her pants off and touch herself. K.B. followed their directions, took off her pants and inserted her fingers into her vagina.

During the two subsequent encounters, defendant and D.C. performed vaginal and oral sex in front of K.B. Defendant and D.C. taught K.B. "how to use sex toys such as a vibrator and a dildo." Defendant held K.B.'s legs open while D.C. inserted a sex toy into K.B.'s vagina. Defendant and K.B. also took turns performing oral sex on D.C.

K.B. also engaged in sexual conduct with defendant two times when D.C. was not present. Defendant masturbated while watching pornography. Defendant "had a dildo that also had a built-in vibrator mechanism on the top of it." Defendant inserted the sex toy into K.B.'s vagina. K.B. testified, "When I was hesitant

3

about necessarily how far to stick it in, [defendant] came over and said, here, let me show you how far you should, and then pushed it in further into my vagina."

On February 13, 2012, a Division of Youth and Family Services (Division)[2] worker visited K.B.'s school to speak with K.B. about her "safety." The worker testified that during the meeting, K.B. disclosed that "her sister's boyfriend raped her multiple times and that her sister was present during some of those incidents." The worker testified that "[K.B.] seemed relieved to be able to tell somebody, get it off her chest."

Defendant, who did not testify, admitted her involvement in a videotaped statement she gave to the police. She stated on the tape that when K.B. was eleven, K.B. said she was sexually active and asked defendant questions about sex. Defendant said that she was concerned and wanted to educate K.B. about safe sex. Defendant admitted to her part in the sexual activity alleged by K.B.

Defendant and D.C. were indicted in three counts with committing first-degree aggravated sexual assault against K.B. when she was under thirteen years old, between June and August 2010 in Lakewood, N.J.S.A. 2C:14-2(a)(1) (counts one through three). Count four charged defendant alone with the same crime. She was also charged in count five with the same crime between

_____

[2] Currently the Division of Child Protection and Permanency.

August and September 2010. Counts six through eight charged defendant and D.C. with three counts of second-degree sexual assault against K.B. between June and August 2010 in Lakewood, N.J.S.A. 2C:14-2(b). Counts nine through twelve charged defendant alone with second-degree endangering the welfare of K.B. between June and August 2010 in Lakewood, N.J.S.A. 2C:24-4(a). Count thirteen charged defendant with the same crime between August and September 2010. The jury convicted defendant of all charges and she was given concurrent sentences.[3]

Defendant raises the following issue on appeal:

> POINT ONE: THE TRIAL COURT VIOLATED N.J.R.E. 404(b) BY ALLOWING A DYFS WORKER TO TESTIFY THAT SHE INTERVIEWED K.B. ABOUT HER SAFETY, DEPRIVING [DEFENDANT] OF HER RIGHT TO A FAIR TRIAL; THE COURT'S FAILURE TO GIVE A LIMITING INSTRUCTION WAS ERROR. (Not Raised Below)

> POINT TWO: THE TRIAL COURT'S ERRONEOUS JURY CHARGES ON ENDANGERING THE WELFARE OF A CHILD DEPRIVED [DEFENDANT] OF HER RIGHT TO DUE PROCESS AND A FAIR TRIAL. (U.S. Const. Amends. V, VI and XIV; N.J. Const. (1947), Art. I [¶]1, 9, and 10.)

> POINT THREE: THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE

---

[3] D.C. was tried separately. Unlike defendant, D.C. admitted only one incident of sexual activity to the police. The jury evidently did not believe much of K.B.'s testimony about D.C.'s actions because he was acquitted on most counts. On appeal, we reversed his conviction, due to errors in the jury charge and verdict sheet, which mandated reversal and made a retrial impossible without violating Double Jeopardy principles. State v. D.C., No. A-2825-14T4 (App. Div. June 19, 2017).

SENTENCE AND A $14,000.00 SEX CRIMES VICTIM
TREATMENT FUND PENALTY.

I

Defendant argues as plain error that the testimony by the Division worker led the jury to assume that defendant was involved in an unsafe situation that caused the caseworker to meet with K.B. Defendant argues that the trial court failed to perform a Cofield analysis "to avoid the over-use of extrinsic evidence of other crimes or wrongs." State v. Cofield, 127 N.J. 328, 338 (1992); N.J.R.E. 404(b).

The caseworker's testimony was short and constituted "fresh complaint" evidence. See State v. R.K., 220 N.J. 444, 455 (2015). It would have been unreasonable for a jury to assume that defendant was responsible for creating the concerns that led the Division worker to speak with K.B. because K.B. was not living with defendant at that time. Defense counsel and the prosecutor asked questions to clarify that the caseworker's initial reason for the inquiry was unrelated to defendant.

When reviewing a trial judge's ruling on the admissibility of evidence, we must determine whether there has been an abuse of discretion. Brenman v. Demello, 191 N.J. 18, 31 (2007). When the defendant failed to object to the admission of testimony, this court reviews the admission of such evidence "for plain error, only reversing if the error is 'clearly capable of producing an

unjust result.'" State v. Rose, 206 N.J. 141, 157 (2011) (quoting R. 2:10-2).

Pursuant to N.J.R.E. 403, evidence that is relevant may be inadmissible if the risk of prejudice substantially outweighs its probative value. "In relevance determinations, the analysis focuses on 'the logical connection between the proffered evidence and a fact in issue.'" State v. Williams, 190 N.J. 114, 123 (2007) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 15 (2004)). "The standard for the requisite connection is generous: if the evidence makes a desired inference more probable than it would be if the evidence were not admitted, then the required logical connection has been satisfied." Ibid. (citing State v. Davis, 96 N.J. 611, 619 (1984)).

The caseworker's testimony was relevant as it provided the jury with an explanation as to how the conduct became known to the authorities. The risk of prejudice was minimal because the caseworker told the jury that the Division was not investigating any mistreatment of K.B. by defendant.

After the caseworker's testimony, the trial judge addressed the jury regarding the limited purpose of her testimony, stating:

> The only reason that evidence is permitted is to negate the inference that K.B. failed to confide in anyone about the sexual offense. In other words, the narrow purpose of the fresh complaint rule is to allow the State to introduce such evidence to negate any

> inference that K.B. failed to tell anyone about the sexual offense and that, therefore, her later assertion could not be believed.

The testimony was not unfairly prejudicial to defendant and does not support defendant's argument, raised for the first time on appeal. N.J.R.E. 404(b), which regulates the admissibility of other crimes or bad acts, was not applicable.

II

Defendant argues next that the trial court failed to properly instruct the jury regarding the charge of endangering the welfare of a child. Pursuant to N.J.S.A. 2C:24-4(a), defendant must have had a legal duty to care for K.B. or assumed responsibility for the care of K.B. to be guilty of second-degree endangering the welfare of a child. Defendant contends that the trial court mistakenly refused to include language in its charge pursuant to State v. Galloway, 133 N.J. 631 (1993) and State v. McInerney, 428 N.J. Super. 432 (App. Div. 2012), certif. denied, 214 N.J. 175 (2013), which would have clarified that defendant's relationship with K.B. did not trigger the requisite duty of care.

Additionally, defendant argues that further harm was caused by the court when it agreed to instruct the jury that evidence of K.B.'s prior sexual activity could be used as evidence of the lack of intent to debauch the morals of the child and then did not do so.

The charge of second-degree endangerment of a child applies only to a "person having the legal duty for the care of a child or who has assumed responsibility for the care of a child." N.J.S.A. 2C:24-4(a). In Galloway, our Supreme Court distinguished between those that assume a "general and ongoing responsibility" for the supervision of the child and those who only assume "temporary, brief, or occasional caretaking functions." Galloway, supra, 133 N.J. at 661. In Galloway, the Court held that occasional caretakers would be "chargeable with child endangerment in the fourth degree." Id. at 662. This type of supervision includes infrequent and irregular babysitting. Ibid.

Interpreting the Legislature's intent, the Court in Galloway also pointed out:

> the third-degree crime of child endangerment should apply to those who have assumed a general and ongoing responsibility for the care of the child. That responsibility may be legal and formal or it may arise from informal arrangements. It may be based on a parental relationship, legal custody, or on less-structured relations; or it may arise from cohabitation with the child's parent. The actor, however, must have established a continuing or regular supervisory or caretaker relationship with the child that would justify the harsher penalties of the third-degree crime of child endangerment under N.J.S.A. 2C:24-4.
>
> [Id. at 661.]

"[T]he profound harm that can be inflicted on a child by one who holds a position of trust is what propels the offense of endangering from a third- to a second-degree offense." State v. Sumulikoski, 221 N.J. 93, 108 (2015).

> The State must prove the following elements beyond a reasonable doubt to convict a person of second-degree endangerment: (1) the victim was a child; (2) defendant knowingly engaged in sexual conduct, which would impair or debauch the morals of a child; and (3) defendant (a) had a legal duty for the care of the child or (b) had assumed responsibility for the care of the child.
>
> [Ibid. (citing N.J.S.A. 2C:24-4(a)(1)).]

"The considerations under N.J.S.A. 2C:24-4(a) focus more on the dependence and trust the child places in the adult." McInerney, supra, 428 N.J. Super. at 449.

"[C]lear and correct jury charges are essential to a fair trial." State v. Brown, 138 N.J. 481, 522 (1994). In evaluating whether claimed defects in the jury instructions rise to the level of reversible error, we must consider those defects within the overall context of the charge as a whole. State v. Simon, 161 N.J. 416, 477 (1999). The alleged error must be "viewed in the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006). If, upon reviewing the charge as a whole, the reviewing court finds that prejudicial error did not occur, then the jury's verdict must stand. State v. Coruzzi,

189 <u>N.J. Super.</u> 273, 312 (App. Div.), <u>certif. denied</u>, 94 <u>N.J.</u> 531 (1983).

Regarding the legal duty for care of a child, the court instructed the jury:

> The final fourth element that the State must prove beyond a reasonable doubt is that the defendant had a legal duty for the care of the child, or assumed responsibility for the care of the child. A person having a legal duty for the care of a child, or who has assumed responsibility for the care of the child, includes a natural parent, adoptive parent, foster parent, stepparent, or any other person who has assumed responsibility for the care, custody or control of a child, or upon whom there is a legal duty for such care.
>
> A person who has assumed the responsibility for the care of the child includes any person who assumes a general and ongoing responsibility for the child and who establishes a continual — continuing or regular supervisory or caretaking relationship with the child.

The court then proceeded to instruct the jury on the lesser-included offense of third-degree endangering the welfare of a child, which does not require proof that the defendant had a legal duty of care of the child.

Based on K.B.'s testimony and defendant's statement, defendant was a trusted figure K.B. looked up to, and who cared for K.B.'s well-being. K.B. was not living with defendant at the time of the sexual encounters, however she was consistently staying at defendant's home after school, on weekends, and for weeks during

11                                            A-1810-14T3

the summers.  Defendant had been the primary caretaker when K.B. lived with her.  K.B. testified, "I just more listened to her, you know, no matter what she said to me.  I trusted her guidance. And, you know, I trusted everything she said to me and everything she told me to do."  Defendant stated on the videotape that K.B. "look[ed] up to [her] more as a mother."

The instruction given by the court is consistent with Galloway and Sumulikoski in defining legal duty and assumed responsibility. In McInerney, the trial court instructed the jury with the same model charge, and we determined that the charge "clearly provided the jurors with adequate direction on Galloway's critical distinction between persons who assume 'general and ongoing responsibility' for 'regular supervision or caretaking' and those who assume 'a temporary, brief, or occasional caretaking function.'"  McInerney, supra, 428 N.J. Super. at 444-45. Defendant's responsibility over K.B. went beyond just temporary and occasional caretaking.  K.B. habitually stayed at her house, and had lived with defendant for a year in the past.  K.B. testified that she trusted defendant completely.  Defendant's videotaped admissions, in which she also claimed her intention was to protect and benefit K.B., rather than being exculpatory, was further evidence of her assumption of a caretaking role.

Defense counsel in summation did not deny the sexual activity occurred, as defendant admitted on the videotape shown to the jury. Rather, counsel argued that co-defendant was the true culprit and defendant was only trying to protect K.B. On appeal defendant argues that the court should have charged the jury that K.B.'s prior sexual activity, as alleged in defendant's statement, showed that defendant was trying to protect K.B. by teaching her about sex. We have held, however, that an intent to debauch the morals of a child is not necessary. We stated:

> a conviction for a violation of N.J.S.A. 2C:24-4(a) does not require proof that a defendant knew that his sexual conduct would impair or debauch the victim's morals. Instead, the State must prove, or a defendant must admit, only that he knowingly engaged in sexual conduct with a child below the age of sixteen and that such conduct had the capacity to impair or debauch the morals of a child.
>
> [State v. Bryant, 419 N.J. Super. 15, 17-18 (App. Div. 2011).]

K.B.'s prior sexual activity, if it occurred, is irrelevant to the offense charged. The trial court's charge, when viewed as a whole, did not contain prejudicial error.

### III

When sentencing defendant, the court found mitigating factors four, that there were grounds to excuse or justify defendant's conduct; seven, that the defendant had no prior criminal history; and eight, that defendant's conduct was the result of circumstances

13

unlikely to recur.  N.J.S.A. 2C:44-1(b) (4), (7) & (8).  The court found aggravating factors one, the nature and circumstances of the offense; two, the seriousness of the harm inflicted on the victim; and nine, the need to deter defendant and others from violating the law.  N.J.S.A. 2C:44-1(a) (1), (2) & (9).  Defendant argues that the court erred in its analysis and balancing of aggravating and mitigating factors and improperly imposed a financial penalty upon defendant.  We agree with some of defendant's arguments and reverse and remand for resentencing.

We apply a deferential standard of review to the sentencing court's determination.  State v. Bolvito, 217 N.J. 221, 228 (2014).

> Appellate courts must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not "based upon competent credible evidence in the record;" or (3) "the application of the guidelines to the facts" of the case "shock[s] the judicial conscience."
>
> [Id. at 228 (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

The court erred in using the age of the victim as support for aggravating factor two, when the victim's age is also an element of the crime.  See State v. Fuentes, 217 N.J. 57, 79-81 (2014).

Aggravating factor two states:

> The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was

> particularly vulnerable or incapable of
> resistance due to advanced age, ill-health,
> or extreme youth, or was for any other reason
> substantially incapable of exercising normal
> physical or mental power of resistance.
>
> [N.J.S.A. 2C:44-1(a)(2).]

The trial court applied this factor based on "the seriousness of the harm inflicted upon the victim, and that she was particularly vulnerable because of her situation of extreme youth at the time." One element of first-degree aggravated sexual assault is that the victim is less than thirteen years old. N.J.S.A. 2C:14-2(a)(1). K.B. was twelve. "[A] sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." Fuentes, supra, 217 N.J. at 75. Considering the victim's age is only permissible when the victim is much younger than is required to be guilty of the crime. See State v. Taylor, 226 N.J. Super. 441, 453 (App. Div. 1988) (finding that the "extreme youth" of the four-year-old victim was an appropriate aggravating factor).

Next, defendant contends that the court erred in finding the aggravating factor of deterrence, N.J.S.A. 2C:44-1(a)(9), and the mitigating factor that the conduct is unlikely to recur, N.J.S.A. 2C:44-1(b)(8), because the two rarely appear in the same sentencing. Given the unusual situation here, where defendant will not be in proximity to K.B. in the future, we accept the

court's explanation that this is one of those rare situations where both factors are appropriately applied. See Fuentes, supra, 217 N.J. at 78-80.

Defendant argues that the court erred in imposing a $14,000 Sex Crime Victim Treatment Fund penalty (SCVTF) pursuant to N.J.S.A. 2C:14-10 because the court failed to consider the nature of the offense and defendant's ability to pay as required by Bolvito, supra, 217 N.J. at 221. The State acknowledges that the court did not specifically address defendant's ability to pay the $14,000 penalty.

A sentencing court may impose an SCVTF penalty against a defendant in any amount between a nominal figure and the upper limit prescribed by N.J.S.A. 2C:14-10(a) for the degree of the offense at issue. Bolvito, supra, 217 N.J. at 233. In making that determination, a sentencing "court should begin by considering the nature of the offense when determining a defendant's SCVTF penalty within the statutory range." Ibid. In particular, when setting an SCVTF penalty, courts "should consider the defendant's ability to pay the amount assessed." Id. at 234. "If a substantial penalty is assessed against a defendant who has no realistic prospect of satisfying it, that penalty is destined to become an unsatisfied judgment . . . ." Ibid. In determining a defendant's ability to pay, "the sentencing court should look

beyond the defendant's current assets and anticipated income during the period of incarceration." <u>Ibid.</u> Upon sentencing, the "court should provide a statement of reasons when it sets a defendant's SCVTF penalty within the statutory parameters," which "will apprise the parties, the victim, and the public and will facilitate appellate review." <u>Id.</u> at 235. The court did not supply such a statement of reasons here.

We thus remand for resentencing without consideration of aggravating factor two. The sentencing court should also state the reasons for the imposition of any SCVTF penalty imposed, including within those reasons an assessment of defendant's ability to pay.

The convictions are affirmed and the sentence is reversed and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-1810-14T3