CARROLL, J.A.D.
*867 *59 These appeals stem from the tragic death of a young New York man from a heroin overdose. In New Jersey, N.J.S.A. 2C:35-9(a) provides that "[a]ny person who manufactures, distributes or dispenses ... [a] controlled dangerous substance (CDS) classified in Schedules I or II ... is strictly liable for a death which results *60 from the injection, inhalation[,] or ingestion of that substance, and is guilty of a crime of the first degree." New York has no comparable statute.
In these appeals, which we consolidate for purposes of this opinion, we address the issue of territorial jurisdiction in the context of the strict liability for drug-induced death statute. In A-2893-17, the trial court dismissed the strict liability charge against defendants Noel E. Ferguson and Anthony M. Potts, New York residents who allegedly purchased heroin from defendant Shameik Byrd in Paterson and later distributed some of the heroin to the victim in New York, where he died of an overdose. In A-2894-17, the trial court denied Byrd's motion to dismiss the same count of the indictment. The court found that, because Byrd allegedly distributed heroin in New Jersey that ultimately resulted in the user's death, Byrd's conduct fell within the purview of N.J.S.A. 2C:35-9(a).
Pursuant to leave granted, the State appeals the orders dismissing count fourteen of the indictment against Ferguson and Potts based on the State's failure to establish territorial jurisdiction in New Jersey, while Byrd appeals the denial of his dismissal motion. For the reasons that follow, we affirm the trial court orders.
I.
For the purpose of these appeals, the record is essentially undisputed. We glean the following facts from the indictment and the grand jury testimony.
On April 3, 2016, Kean Cabral, a resident of Warwick, New York, died in his home from a heroin overdose. Alongside his body, local police recovered several bags of heroin labeled "Trap Queen."
Shortly thereafter, Warwick police received an anonymous tip relating to Cabral's death. The information provided by the female caller corroborated the evidence found at the crime scene. In particular, the caller reported that Ferguson sold heroin with the *61 logo "Trap Queen" to Cabral on April 2, 2016, and that Ferguson had purchased the heroin in Paterson. The caller added that Ferguson and Potts both sold heroin, and that they travelled to Paterson every two days to purchase the drug.
On April 4, 2016, Warwick police provided this information to a detective in the New Jersey Division of Criminal Justice. Two days later, police established surveillance and tracked Ferguson and Potts as they crossed from New York into New Jersey. The police followed the vehicle into an area of Paterson where Byrd resided with his mother and brother, Jerry Byrd.[1] There, the police observed Jerry Byrd exit *868 the home and engage in what appeared to be the sale of illicit drugs to Potts.
The police followed Ferguson and Potts out of the area before stopping their vehicle. Upon approaching their car, a detective observed in plain view "an empty glassine envelope with suspected heroin residue on the driver's side armrest." Ferguson, the driver, admitted there was heroin in the vehicle. She then retrieved a "small black plastic bag containing [fifty] glassine envelopes of suspected heroin," several of which were labeled "Trap Queen."
Ferguson and Potts were arrested, and both gave sworn statements to the police. Ferguson confirmed that she and Potts routinely purchased heroin in Paterson, and that on April 1, 2016, they had purchased heroin from an individual known as "Home Boy," who was subsequently identified as Byrd. Ferguson provided police with the cell phone number she called to arrange the heroin purchase. She also admitted that she and Potts later sold glassine bags of heroin to Cabral on April 1, and thirteen additional glassine envelopes on April 2.
Potts gave a similar statement, admitting to purchasing heroin from "Home Boy" in Paterson on April 1, 2016. He also confirmed *62 that on that same evening, Cabral asked to buy heroin from him and Ferguson. Potts stated he then sold "ten glassine envelopes of heroin" to Cabral, and that he and Ferguson supplied Cabral with more heroin the next day.
On May 5, 2016, police searched Byrd's home in Paterson and recovered six "bricks" consisting of 300 glassine envelopes of heroin. They then called the cell phone number provided by Ferguson and observed a phone vibrating in Byrd's pocket. After Byrd confirmed it was his personal cell phone, the police seized the phone and placed him under arrest.
A State Grand Jury indicted defendants on October 21, 2016. The fourteen-count indictment charged defendants and Jerry Byrd with various crimes relating to the possession and distribution of heroin on divers dates. The present appeal focuses on count fourteen, which charges defendants with first-degree strict liability for drug-induced death in violation of N.J.S.A. 2C:35-9. Specifically, count fourteen alleges that defendants distributed heroin, and that Cabral died as a result of injecting, inhaling, or ingesting the heroin they distributed.
Defendants each moved separately to dismiss count fourteen on the basis that the State lacked territorial jurisdiction to prosecute the offense in New Jersey. In a comprehensive oral opinion, the judge granted the motion with respect to Ferguson and Potts, but denied the motion as to Byrd.
In his analysis, the judge focused on N.J.S.A. 2C:1-3(a)(1), which confers territorial jurisdiction in New Jersey when "[e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State." The judge found that "no distribution occurred in New Jersey by either Ferguson [or] Potts." While Ferguson and Potts may have possessed heroin with the intent to distribute it while they were located in New Jersey, they did not actually distribute it here, which conduct N.J.S.A. 2C:35-9 renders unlawful when a death results. The judge concluded: "Because this [c]ourt finds that the distribution [and] ingestion of [heroin] and [Cabral's] death occurred in the State of *63 New York, and none of those occurred in New Jersey, ... the charge of strict liability [for] drug induced death under [N.J.S.A.] 2C:35-9 as to defendants Ferguson and Potts must fail." *869 The trial judge reached a different result as to Byrd. The judge rejected Byrd's contention that the exceptions embodied in subsections (b) and (c) of N.J.S.A. 2C:1-3 preclude New Jersey from exercising jurisdiction under N.J.S.A. 2C:1-3(a)(1). The judge found "there is jurisdiction here in New Jersey based upon the fact that the conduct which is an element of the offense occurred via Mr. Byrd's alleged distribution to Ferguson and Potts here in New Jersey." Relying on State v. Maldonado, 137 N.J. 536, 645 A.2d 1165 (1994), the judge found it was "a jury question" whether Byrd's distribution of the heroin to Ferguson and Potts was too remote to hold him strictly liable for Cabral's overdose death.
II.
Pursuant to leave granted, the State appeals the orders dismissing count fourteen of the indictment against Ferguson and Potts for lack of territorial jurisdiction. We also granted Byrd's motion for leave to appeal the denial of his motion to dismiss count fourteen.
Our standard of review is well settled. "An indictment is presumed valid and should only be dismissed if it is 'manifestly deficient or palpably defective.' " State v. Feliciano, 224 N.J. 351, 380, 132 A.3d 1245 (2016) (citation omitted). "A motion to dismiss is addressed to the discretion of the trial court, and that discretion should not be exercised except for 'the clearest and plainest ground.' " Ibid. (citation omitted). We will only disturb the trial court's decision on a motion to dismiss for a clear abuse of discretion. State v. Hogan, 144 N.J. 216, 229, 676 A.2d 533 (1996).
"At the grand jury stage, the State is not required to present enough evidence to sustain a conviction. As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not *64 dismiss an indictment." Feliciano, 224 N.J. at 380, 132 A.3d 1245 (citations omitted). "[A] court examining a grand jury record should determine whether, 'viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it.' " Id. at 380-81, 132 A.3d 1245 (citation omitted).
Under our Code of Criminal Justice, territorial jurisdiction is classified as an element of an offense that ultimately must be proved beyond a reasonable doubt. N.J.S.A. 2C:1-14(h) ; State v. Denofa, 187 N.J. 24, 38, 898 A.2d 523 (2006). "There must be territorial jurisdiction in New Jersey for the State to prosecute a crime here. The State has the power to prosecute crimes that occurred within its borders but may not bring charges for offenses committed entirely in another state or country." State v. Sumulikoski, 221 N.J. 93, 101, 110 A.3d 856 (2015) (citing Denofa, 187 N.J. at 36, 898 A.2d 523 ).
"Any objection to the State's jurisdiction to prosecute a crime should be raised as early as possible before trial." Denofa, 187 N.J. at 43, 898 A.2d 523. Here, "[d]efendants properly brought their motion to dismiss based on territorial jurisdiction early in the proceedings." Sumulikoski, 221 N.J. at 105, 110 A.3d 856.
"[T]he various methods that allow for jurisdiction in a criminal case all require a direct nexus to New Jersey." Id. at 102. These methods are clearly set forth in N.J.S.A. 2C:1-3(a), which provides as follows:
(a) Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the *870 conduct of another for which he is legally accountable if:
(1) Either the conduct which is an element of the offense or the result which is such an element occurs within this State;
(2) Conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit a crime within the State;
(3) Conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State;
*65 (4) Conduct occurring within the State establishes complicity in the commission of, or an attempt, or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this State;
(5) The offense consists of the omission to perform a legal duty imposed by the law of this State with respect to domicile, residence or a relationship to a person, thing or transaction in the State; or
(6) The offense is based on a statute of this State which expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest.
III.
The State relies on N.J.S.A. 2C:1-3(a)(1) to assert jurisdiction over defendants with respect to the charge of strict liability for drug induced death. Specifically, the State focuses on the language, "conduct which is an element of the offense [that] occurs within this State."[2] We assess the State's assertion of jurisdiction in light of the strict liability statute, which, as noted, provides in relevant part that
Any person who manufactures, distributes or dispenses ... [a] [CDS] classified in Schedules I or II ..., in violation of subsection (a) of N.J.S.A. 2C:35-5, is strictly liable for a death which results from the injection, inhalation[,] or ingestion of that substance, and is guilty of a crime of the first degree.
[ N.J.S.A. 2C:35-9(a).]
A.
Ferguson and Potts
Relying on United States v. Brunty, 701 F.2d 1375, 1380-82 (11th Cir. 1983), the State argues the element of "distribution" is not limited to the physical transfer of possession of CDS, and instead encompasses "participation in the transaction viewed as a whole." (citations omitted). Thus, the State contends distribution "may also consist of or include other acts perpetrated in furtherance of a transfer or sale," thereby making venue proper in any district in which such acts occurred, not merely the district in *66 which the drugs changed hands. Id. at 1381. Adopting this expansive interpretation of the distribution element, the State submits a reasonable jury could find that distribution began when Ferguson and Potts obtained the heroin in New Jersey and began their trip back to New York where they then sold portions of the drug to Cabral.
Alternatively, the State argues that, even if distribution can be said to occur only at the moment when the drugs *871 change hands, jurisdiction is proper here because proofs necessary to establish the distribution element of the drug-induced death offense occurred in New Jersey. Specifically, the State contends the initial possession and transportation of heroin by Ferguson and Potts in New Jersey are "intrinsic" to the drug's ultimate distribution in New York, and thus sufficient to confer jurisdiction here.
We do not find the State's arguments or its reliance on Brunty persuasive. Rather, the State's position contravenes well-settled New Jersey law governing statutory interpretation, which "look[s] first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." State v. Masce, 452 N.J. Super. 347, 351, 174 A.3d 523 (App. Div. 2017) (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264, 952 A.2d 1077 (2008) ). "[W]here a plain reading of the statute 'leads to a clear and unambiguous result, then the interpretive process should end ....' " Watson v. N.J. Dep't of the Treasury, 453 N.J. Super. 42, 48, 179 A.3d 1061 (App. Div. 2017) (citation omitted); see also State v. Young, 448 N.J. Super. 206, 219, 152 A.3d 955 (App. Div. 2017) ("[A]ll penal statutes are to be strictly construed.") (citation omitted).
N.J.S.A. 2C:35-2 defines "distribute" for purposes of N.J.S.A. 2C:35-9. "Distribute" means "to deliver other than by administering or dispensing a [CDS] or controlled substance analog." N.J.S.A. 2C:35-2. In turn, "deliver" means "the actual, constructive, or attempted transfer from one person to another of a CDS or controlled substance analog, whether or not there is an agency relationship." Ibid. Notably, possession of CDS with intent to *67 distribute it is not included in the definitions of "distribute" or "delivery," as the State would have it. Since the statutory language is not ambiguous, N.J.S.A. 2C:35-9 must be construed in accordance with its terms. See Young, 448 N.J. Super. at 218, 152 A.3d 955 (citation omitted).
On the facts presented, it is undisputed that the actual transfer of the heroin by Ferguson and Potts to Cabral that allegedly resulted in Cabral's death occurred in New York.[3] Because N.J.S.A. 2C:35-9 makes clear, by its express terms, that "distribut[ion]" does not include possession with intent to distribute, the State has not met its burden of establishing that an "inference could reasonably be drawn placing the site of the crime within th[is] State." Denofa, 187 N.J. at 43, 898 A.2d 523 (citation omitted).
Perhaps under N.J.S.A. 2C:1-3(a) the result we reach might be different if the evidence in support of the indictment were sufficient to create an inference that Ferguson or Potts engaged in a conspiracy with Byrd in New Jersey, or otherwise acted as Byrd's agent or accomplice, to distribute the heroin to Cabral in New York. That is not the case here. Accordingly, we conclude the State is without territorial jurisdiction to prosecute Ferguson and Potts for strict liability drug-induced death under N.J.S.A. 2C:35-9.
B.
Byrd
In his appeal, Byrd argues New Jersey lacks territorial jurisdiction under *872 N.J.S.A. 2C:1-3(a)(1) to prosecute the drug-induced *68 death charge because the conduct which is an element of that offense did not occur here. Alternatively, Byrd contends the exceptions to jurisdiction that are embodied in subsections (b) and (c) of N.J.S.A. 2C:1-3 apply so as to negate New Jersey's exercise of jurisdiction. We disagree.
Like the trial court, we conclude there is territorial jurisdiction to prosecute Byrd in New Jersey for strict liability drug-induced death because his distribution of heroin, which allegedly resulted in Cabral's death, occurred in New Jersey. Contrary to Byrd's argument, under N.J.S.A. 2C:1-3(a)(1), this alleged heroin distribution "constitutes the conduct which is an element of the offense" of strict liability drug-induced death. At this phase of the proceedings, it is undisputed such conduct occurred here.
The grand jury unquestionably had before it "some evidence" that an element of the crime for which Byrd was indicted took place in New Jersey. Byrd retains the right to argue before the jury that the subsequent actions of Ferguson and Potts in transporting the heroin to New York and distributing it there render Cabral's death "too remote in its occurrence" or "too dependent upon conduct of another person" to impose criminal liability on him. See N.J.S.A. 2C:35-9(b)(2). Those arguments, however, are not a sufficient basis to dismiss count fourteen of the indictment. There is nothing in N.J.S.A. 2C:35-9 that limits criminal liability to instances where a defendant distributes heroin directly to the deceased user. The statute applies to both the drug kingpin and the low level distributor. Maldonado, 137 N.J. at 571, 645 A.2d 1165 ("The statute is intended to apply to every wrongdoer in the distribution chain.").
Subsections (b) and (c) of N.J.S.A. 2C:1-3 carve out exceptions where jurisdiction might otherwise attach under subsection (a)(1) of the statute. Those exceptions provide:
b. Subsection a.(1) does not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the charge would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result.
*69 c. Except as provided in subsection g., subsection a.(1) does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside the State which would not constitute an offense if the result had occurred there, unless the actor purposely or knowingly caused the result within the State.
[ N.J.S.A. 2C:1-3(b),(c) (emphasis added).]
Byrd argues that these exceptions preclude New Jersey from exercising jurisdiction over the drug-induced death charge. With respect to subsection (b), Byrd focuses on the "result" element, and contends Cabral's drug-induced death in New York from a heroin overdose would not constitute a strict liability crime in that State. However, Byrd's argument ignores the "conduct" component, that is, the distribution of heroin, which plainly constitutes criminal conduct in New York as well as New Jersey.
We reach the same conclusion with respect to subsection (c). We reiterate that the conduct that allegedly resulted in Cabral's death was Byrd's distribution of heroin. The evidence before the grand jury established that such conduct occurred in, *873 rather than outside, New Jersey. Hence, this exception is likewise inapplicable, and Byrd's motion to dismiss count fourteen of the indictment was properly denied.
Affirmed.

Although Jerry Byrd was also charged in the subject indictment, he was not charged in count fourteen with violating N.J.S.A. 2C:35-9(a) and he is not part of the present appeal. All references in this opinion to "Byrd" relate solely to defendant Shameik Byrd.

It is undisputed that "the result which is such an element," that is, Cabral's tragic death, occurred outside New Jersey.

Nor was there a "constructive" transfer of CDS in New Jersey, which also meets the definition of "delivery" under N.J.S.A. 2C:35-2. Constructive possession occurs when "although [a person] lacks 'physical or manual control' [of the CDS], the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." State v. Morrison, 188 N.J. 2, 14, 902 A.2d 860 (2006). That was not the situation here.