SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### State v. Noel E. Ferguson (A-8/9-18) (081423)

**Argued February 26, 2019 -- May 20, 2019**

**ALBIN, J., writing for the Court.**

In a criminal prosecution, the State must have territorial jurisdiction to enforce its laws against a defendant. Defendant Shameik Byrd sold heroin to defendants Noel Ferguson and Anthony Potts in Paterson, New Jersey. Afterwards, Ferguson and Potts returned to their home state of New York where they sold the heroin they purchased to Kean Cabral. Cabral died of an overdose after taking the heroin originally sold by Byrd. New Jersey criminalizes as a strict-liability offense illicitly distributing drugs that cause death to the user. New York does not. The issue is whether New Jersey has territorial jurisdiction to prosecute the three defendants under its strict-liability statute, N.J.S.A. 2C:35-9, for Cabral's drug-induced death in New York.

The three defendants were charged with multiple violations of New Jersey's drug laws and with the first-degree crime of distributing heroin that caused the death of Cabral in violation of the strict-liability drug-induced death statute, N.J.S.A. 2C:35-9. Each defendant moved separately to dismiss the strict-liability drug-induced death charge on the ground that the State lacked territorial jurisdiction to prosecute the offense.

The trial court dismissed the drug-induced death charges filed against Ferguson and Potts, reasoning that the State lacked territorial jurisdiction because neither the conduct (the distribution of heroin) nor the result (the death of the victim) -- the necessary elements for a conviction under N.J.S.A. 2C:35-9 and for territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1) -- occurred in New Jersey. In contrast, the court found that the State had territorial jurisdiction to prosecute Byrd for Cabral's drug-induced death because the necessary conduct for a prosecution under N.J.S.A. 2C:35-9 and for territorial jurisdiction -- the distribution of heroin -- occurred in New Jersey.

An Appellate Division panel affirmed the dismissal of the drug-induced death charge against Ferguson and Potts and sustained the charge against Byrd for reasons similar to those articulated by the trial court. 455 N.J. Super. 56, 66-69 (App. Div. 2018).

The Court granted both the State's and Byrd's motions for leave to appeal. 235 N.J. 205 (2018).

1

**HELD:** New Jersey does not have territorial jurisdiction to prosecute Ferguson, Potts, or Byrd for the drug-induced death of Cabral in New York.

1. A first principle of any criminal prosecution is that a State must have territorial jurisdiction to enforce the authority of its laws. N.J.S.A. 2C:1-3 sets forth six pathways to territorial jurisdiction, only one of which is relevant to this case. Subsection (a)(1) of N.J.S.A. 2C:1-3 generally provides that a person can be convicted of an offense under New Jersey law if "[e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State." Accordingly, if a defendant's conduct or the result of his conduct are elements of the crime charged and if either the conduct or result occurred in New Jersey, the crime is prosecutable in this State, unless one of the exceptions to territorial jurisdiction delineated in N.J.S.A. 2C:1-3 applies. (pp. 14-16)

2. Ferguson, Potts, and Byrd were charged with violating N.J.S.A. 2C:35-9, the drug-induced death statute. The elements required to prove a violation of the strict-liability drug-induced death statute are (1) the defendant distributed a controlled dangerous substance; (2) the defendant did so knowingly or purposely; (3) the victim used the substance distributed by the defendant; and (4) the victim died as a result of the use of the substance distributed by the defendant, and the death was not too remote in its occurrence or too dependent upon the conduct of another person. Under the drug-induced death statute, the distribution of drugs is a <u>conduct element</u> and the victim's death is a <u>result element</u> for purposes of territorial jurisdiction. Based solely on N.J.S.A. 2C:1-3(a)(1), when the distribution occurs in New Jersey and the drug-induced death in another state, the requisites for territorial jurisdiction have been satisfied. (pp. 16-18)

3. But the Code has exceptions to the general territorial jurisdiction provision of N.J.S.A. 2C:1-3(a)(1). N.J.S.A. 2C:1-3(b), <u>see</u> infra ¶ 6, acts as a restraint on the reach of New Jersey's territorial jurisdiction when one of its criminal laws is not aligned with the public policy of another state, where the result of the conduct is not criminal. Nevertheless, N.J.S.A. 2C:1-3(b) permits New Jersey to prosecute conduct occurring in this State that causes a result in another state, provided "a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result." (pp. 18-20)

4. The Court first addresses whether the State can exert territorial jurisdiction over Ferguson and Potts for causing the drug-induced death of Cabral. Because Cabral's death occurred in New York (the result element), the issue for jurisdictional purposes under N.J.S.A. 2C:1-3(a)(1) is whether Ferguson and Potts distributed the heroin in New Jersey (the conduct element). "'Distribute' means to deliver . . . a controlled dangerous substance," and "'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance." N.J.S.A. 2C:35-2. The distribution of drugs focuses on the final transfer to a particular individual. Ferguson and Potts made no "attempted transfer" or "delivery" of drugs to Cabral in New Jersey. After they purchased the drugs in Paterson, Ferguson and Potts returned to New York,

2

where they sold drugs and <u>delivered</u> heroin to Cabral, acts that constituted distribution. The State cannot establish an act of distribution by Ferguson and Potts in New Jersey that would allow the exercise of territorial jurisdiction on the drug-induced death charge. Accordingly, the Appellate Division properly affirmed the trial court's dismissal of that charge against Ferguson and Potts. (pp. 20-24)

5. In the case of Byrd, the Court reaches a different result on the issue of "distribution." At the grand jury hearing, the State presented evidence that Byrd distributed to Ferguson and Potts in New Jersey the heroin they later sold to Cabral -- the heroin Cabral ingested causing his death. N.J.S.A. 2C:35-9 does not require that a defendant distribute drugs directly to the victim to be found guilty of violating the statute. The State has satisfied the conduct-element requirement for territorial jurisdiction, thus rendering Byrd generally subject to this State's territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1). (pp. 24-25)

6. The only remaining question is whether Byrd's case falls within the exception to territorial jurisdiction delineated in N.J.S.A. 2C:1-3(b), which provides that subsection (a)(1) will not apply when "causing a specified result . . . is an element of an offense and the result occurs . . . in another jurisdiction where <u>the conduct charged</u> would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result." In N.J.S.A. 2C:1-3(a)(1), the term "conduct which is an element of the offense" refers to but one element of a completed crime. In contrast, the term "conduct charged" suggests a completed crime -- all the elements necessary to constitute an offense. Here, "conduct charged" means the strict-liability offense of a drug-induced death, N.J.S.A. 2C:35-9. That offense is not punishable as a crime in New York. Therefore, New Jersey does not have territorial jurisdiction "unless a legislative purpose plainly appears to declare" that a violation of N.J.S.A. 2C:35-9 is prosecutable in this State, regardless of the place where the drug-induced death occurred. <u>See</u> N.J.S.A. 2C:1-3(b). (pp. 25-28)

7. Under N.J.S.A. 2C:1-3(b), courts cannot <u>impute</u> or <u>infer</u> a legislative purpose. A legislative purpose to extend the statute beyond New Jersey's borders must "plainly" appear. Upon review of the legislative declarations codified as part of the Comprehensive Drug Reform Act of 1987, <u>see</u> N.J.S.A. 2C:35-1.1, the Court cannot discern a plain legislative purpose calling for Byrd's prosecution for the strict-liability drug-induced death of Cabral, when New York, where the death occurred, would not prosecute such an offense. (pp. 28-30)

**The judgment of the Appellate Division is affirmed as to Ferguson and Potts and reversed as to Byrd. The matter is remanded to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

3

State of New Jersey,

Plaintiff-Appellant,

v.

Noel E. Ferguson and
Anthony M. Potts,

Defendants-Respondents.

State of New Jersey,

Plaintiff-Respondent,

v.

Shameik Byrd,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
455 N.J. Super. 56 (App. Div. 2018).

| Argued | Decided |
|---|---|
| February 26, 2019 | May 20, 2019 |

Sarah C. Hunt, Deputy Attorney General, argued the
cause for the State of New Jersey (Gurbir S. Grewal,
Attorney General, attorney; Sarah C. Hunt, of counsel
and on the briefs).

Margaret McLane, Assistant Deputy Public Defender, argued the cause for Shameik Byrd (Joseph E. Krakora, Public Defender, attorney; Margaret McLane and Kathryn A. Panaccione, Assistant Deputy Public Defender, of counsel and on the briefs).

Michael J. Montanari argued the cause for Anthony M. Potts (Del Sardo & Montanari, attorneys; Michael J. Montanari, of counsel and on the briefs, and Jayna B. Patel, on the briefs).

Brian J. Neary argued the cause for Noel E. Ferguson (Law Offices of Brian J. Neary, attorneys; Brian J. Neary, of counsel, and Jane M. Personette, on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation and Rutgers Constitutional Rights Clinic Center for Law and Justice, attorneys; Alexander Shalom, Jeanne LoCicero, and Tess Borden, of counsel and on the brief, and Ronald K. Chen, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

In a criminal prosecution, the State must have territorial jurisdiction to enforce its laws against a defendant. State v. Denofa, 187 N.J. 24, 36 (2006). Generally, the State can exercise territorial jurisdiction when either the defendant's conduct or the result of that conduct occurs in New Jersey and is an element of a criminal offense. N.J.S.A. 2C:1-3(a)(1). That general rule governing territorial jurisdiction, however, has limits. Absent a clear legislative purpose indicating otherwise, a defendant cannot be prosecuted for

2

"conduct charged" in New Jersey when that defendant's acts within our borders cause a result in another state where, under that state's law, the "conduct charged" does not constitute a crime. N.J.S.A. 2C:1-3(b).

Based on the facts before us, defendant Shameik Byrd sold heroin to defendants Noel Ferguson and Anthony Potts in Paterson, New Jersey. Afterwards, Ferguson and Potts returned to their home state of New York where they sold the heroin they purchased to Kean Cabral in the Town of Warwick. Cabral died of an overdose in his home after taking the heroin originally sold by Byrd.

As a result of allegedly causing Cabral's death, Ferguson, Potts, and Byrd were charged with violating New Jersey's strict-liability drug-induced death statute, N.J.S.A. 2C:35-9. The three defendants facing that charge in New Jersey cannot be prosecuted in New York for the strict-liability drug-induced death of Cabral because New York has no comparable criminal law. The issue is whether New Jersey has territorial jurisdiction to prosecute the three defendants under its strict-liability statute for Cabral's drug-induced death, which occurred in New York where the conduct charged is not criminal.

The trial court concluded that the State did not have territorial jurisdiction to prosecute Ferguson and Potts under the drug-induced death statute because their conduct -- the distribution of drugs -- and the result --

3

Cabral's death -- both occurred in New York. In contrast, the court found that Byrd was subject to this State's territorial jurisdiction because he distributed in New Jersey the drugs that eventually caused Cabral's death in New York and because no statutory exception to territorial jurisdiction bars his prosecution. The Appellate Division affirmed.

We now hold that New Jersey's Code of Criminal Justice restricts the State's exercise of territorial jurisdiction over Ferguson, Potts, and Byrd for a violation of N.J.S.A. 2C:35-9. Under N.J.S.A. 2C:1-3(a)(1), the State cannot exercise territorial jurisdiction over Ferguson and Potts on the strict-liability drug-induced death charge because their distribution of heroin to Cabral and Cabral's death -- both essential elements of the offense -- did not occur in New Jersey.

Nor is territorial jurisdiction present in Byrd's case on the drug-induced death charge. Although Byrd distributed heroin in New Jersey -- one element of the drug-induced death offense -- N.J.S.A. 2C:1-3(b)'s exception to territorial jurisdiction applies. That is so because the conduct charged in New Jersey is not a crime in New York where the death occurred. Significantly, (1) Cabral purchased the heroin from Ferguson and Potts in New York and consumed the drugs there; (2) Cabral's drug overdose and death occurred in New York, which does not criminalize a drug-induced death as a strict-liability

4

offense; and (3) a "legislative purpose" does not plainly appear authorizing the prosecution in New Jersey of a strict-liability drug-induced death, regardless of the state where the death occurs.  See N.J.S.A. 2C:1-3(b).

Accordingly, the strict-liability drug-induced death charge brought against defendants must be dismissed.  We affirm in part and reverse in part the judgment of the Appellate Division and remand to the trial court for the prosecution of Ferguson, Potts, and Byrd on the remaining drug counts in the indictment.

I.

A.

The relevant facts are discerned from the grand jury testimony of Detective Travis Johnson of the New Jersey Division of Criminal Justice, the sole witness at those proceedings.  We recount only the facts relevant to the jurisdiction issue presented in this appeal.

On April 1, 2016, defendants Noel Ferguson and Anthony Potts traveled from Warwick, New York to Paterson, New Jersey to purchase heroin from defendant Shameik Byrd.  After completing the purchase, Ferguson and Potts returned to New York.  That same night, Kean Cabral contacted Ferguson and Potts seeking to purchase heroin.  Ferguson and Potts sold Cabral fifty dollars' worth of heroin that evening.  The following day, Cabral again contacted

Ferguson and Potts, who later sold him approximately one hundred dollars' worth of heroin.[1]

On April 3, 2016, the Warwick police learned that Cabral had died from an overdose of heroin in his bedroom. Near his body, the Warwick police discovered bags of heroin labeled "Trap Queen." During their investigation, detectives determined that the label "Trap Queen" appeared on the heroin bags sold by Byrd to Ferguson and Potts.

## B.

In a fourteen-count indictment, a State Grand Jury charged Ferguson, Potts, and Byrd with multiple violations of New Jersey's drug laws occurring on April 1, 2, and 6, 2016, and charged Byrd separately with additional violations occurring on May 5, 2016. The three defendants were charged with third-degree distribution, third-degree possession with intent to distribute, and third-degree possession of heroin, as well as with third-degree conspiracy and third-degree possession with intent to distribute in a school zone. In count fourteen, each defendant was charged with the first-degree crime of distributing heroin that caused the death of Cabral in violation of the strict-liability drug-induced death statute, N.J.S.A. 2C:35-9.

---

[1] The record includes minor discrepancies regarding how much heroin Ferguson and Potts sold to Cabral on April 2, 2016.

6

Each defendant moved separately to dismiss the strict-liability drug-induced death charge on the ground that the State lacked territorial jurisdiction to prosecute the offense.

The trial court dismissed the drug-induced death charges filed against Ferguson and Potts, reasoning that the State lacked territorial jurisdiction. In their cases, the court emphasized that neither the conduct (the distribution of heroin) nor the result (the death of the victim) -- the necessary elements for a conviction under N.J.S.A. 2C:35-9 and for territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1) -- occurred in New Jersey. As the court noted, Ferguson and Potts distributed the heroin to Cabral in New York, Cabral ingested the heroin in New York, and Cabral died in New York.

In contrast, the court found that the State had territorial jurisdiction to prosecute Byrd for Cabral's drug-induced death because the necessary conduct for a prosecution under N.J.S.A. 2C:35-9 and for territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1) -- the distribution of heroin to Ferguson and Potts -- occurred in New Jersey. The court, moreover, asserted that the victim's death in New York did not deprive New Jersey of territorial jurisdiction under the exception in N.J.S.A. 2C:1-3(b). In analyzing N.J.S.A. 2C:1-3(b), the court recognized that if the "conduct charged" is the strict-liability drug-induced death, New Jersey has no territorial jurisdiction because New York has no

7

comparable crime. The court concluded, however, that the "conduct charged" in the statute refers to the prohibited distribution of drugs, which is a criminal offense in both states, thus authorizing New Jersey to exercise territorial jurisdiction. Last, the court rejected the argument that, as a matter of law, Cabral's death was "too remote" to hold Byrd strictly liable for that death flowing from his distribution of the heroin in Paterson.

The Appellate Division granted the State's and Byrd's motions for leave to appeal.

### C.

An Appellate Division panel affirmed the dismissal of the drug-induced death charge against Ferguson and Potts and sustained the charge against Byrd for reasons similar to those articulated by the trial court. State v. Ferguson, 455 N.J. Super. 56, 66-69 (App. Div. 2018). In finding that the State did not have territorial jurisdiction to prosecute Ferguson and Potts for the drug-induced death of Cabral, the panel rejected the State's argument that "the initial possession and transportation of heroin by Ferguson and Potts in New Jersey [were] 'intrinsic' to the drug's ultimate distribution in New York, and thus sufficient to confer jurisdiction here." Id. at 66. The panel stated that to prosecute Ferguson and Potts for the strict-liability drug-induced death of Cabral, the State would have to prove that they actually distributed the drugs

8

in this State.  Id. at 67.  Because the facts established that Ferguson and Potts sold the drugs that allegedly caused Cabral's death in New York, the panel concluded that the State did not have a statutory basis to assert territorial jurisdiction.  Ibid.

The panel reached a different conclusion in the case of Byrd.  Id. at 69. Like the trial court, the panel held that Byrd's distribution of heroin in New Jersey, which allegedly caused Cabral's death in New York, "'constitutes the conduct which is an element of the offense' of strict liability drug-induced death" that allows the State to assert territorial jurisdiction.  Id. at 68 (quoting N.J.S.A. 2C:1-3(a)(1)).  The panel also found that the N.J.S.A. 2C:1-3(b) exception to territorial jurisdiction did not bar the prosecution of Byrd.  Id. at 68-69.  In determining the applicability of the exception, the panel focused on the "conduct" component -- "the distribution of heroin, which plainly constitutes criminal conduct in New York as well as New Jersey."  Id. at 69. In addition, the panel rejected the notion that N.J.S.A. 2C:35-9 "limits criminal liability to instances where a defendant distributes heroin directly to the deceased user."  Id. at 68.  The panel dismissed the argument that, as a matter of law, the ultimate distribution of drugs leading to Cabral's death was "'too remote in its occurrence' or 'too dependent upon conduct of another person' to

9

impose criminal liability on [Byrd]" under New Jersey's strict-liability statute. Ibid. (quoting N.J.S.A. 2C:35-9(b)(2)).

We granted both the State's and Byrd's motions for leave to appeal. 235 N.J. 205 (2018). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU) for leave to participate as amicus curiae.

## II.

### A.

#### 1.

Ferguson and Potts contend that to assert territorial jurisdiction under the drug-induced death statute, the State is required to prove that at least one of the following elements occurred within New Jersey: a distribution of heroin to Cabral, the consumption of the drugs by Cabral, or Cabral's death from taking the drugs. Ferguson and Potts submit that territorial jurisdiction is absent because the distribution of heroin to Cabral and his overdose death occurred in New York. They emphasize that a necessary element for a conviction under N.J.S.A. 2C:35-9 is the distribution of drugs -- not possession with intent to distribute the drugs. They reject the argument that their possession of heroin with intent to distribute while in New Jersey constitutes a continuing act of distribution that was consummated in New York, thus satisfying the territorial jurisdictional requirement.

10

### 2.

Byrd argues that, under N.J.S.A. 2C:1-3(a)(1), the State does not have territorial jurisdiction to prosecute him for a strict-liability drug-induced death because N.J.S.A. 2C:35-9(a) requires that all the acts of drug distribution occur in New Jersey. Byrd, moreover, submits that the State cannot meet the jurisdictional requirements of N.J.S.A. 2C:1-3(b) for two reasons. First, all the essential events -- the drug distribution, drug consumption, and drug-induced death -- occurred in New York, where the "conduct charged" (the distribution of drugs that results in death) is not a crime. Second, New Jersey has not expressed a "clear legislative purpose for the drug-induced death statute to apply to deaths that occur outside of New Jersey."

### 3.

Amicus ACLU echoes the basic arguments made by defendants. The ACLU offers the alternative argument that the doctrine of fundamental fairness should bar the prosecution of Byrd for Cabral's drug-induced death because the ultimate providers of the heroin to Cabral -- Ferguson and Potts -- cannot be held liable for that crime. The ACLU contends that, under New Jersey's territorial jurisdiction statutes, Ferguson and Potts "are not responsible because their conduct and the resulting death occurred out of state." It posits that the interests of justice and fairness would not be advanced by the incongruous

11

result of allowing the conviction of Byrd -- the in-state upstream provider. Accordingly, the ACLU submits that this Court should find that, as a matter of law, Byrd's conduct was "too remote, and too dependent upon the conduct of the ultimate providers (Ferguson and Potts) . . . for liability to be 'just' within the meaning of N.J.S.A. 2C:35-9(b)(2)."

B.

The State argues that, for territorial jurisdiction purposes, the requisite element of distribution necessary to support a conviction of Ferguson and Potts for the drug-induced death in New York occurred in New Jersey. In the State's view, the possession and transportation of the heroin from New Jersey by Ferguson and Potts was "intrinsic to its ultimate distribution" and therefore satisfied the essential element of distribution necessary to prove the drug-induced death charge. Because the "conduct constituting the distribution element . . . began in New Jersey," the State contends that it has sufficiently established territorial jurisdiction over Ferguson and Potts to proceed with a prosecution for the strict-liability drug-induced death offense. The State reasons that it would be incongruous to hold "a dealer one step removed from the victim liable while allowing those who sold directly to the victim to escape liability."

12

The State submits that territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1) is present to prosecute Byrd because "the conduct element of the [drug-induced death] offense -- [his] distribution of the heroin that killed the victim -- unquestionably occurred in New Jersey" and because N.J.S.A. 2C:35-9 "does not limit liability to only the final link in the drug-distribution chain." The State stresses that N.J.S.A. 2C:35-9(a) does not suggest "that only those who sell directly to the victim are liable for the victim's death." The State underscores that "every person in the distribution chain is potentially liable [under] the drug-induced-death statute."

Further, the State maintains that the exception to territorial jurisdiction under N.J.S.A. 2C:1-3(b) does not apply in Byrd's case. The State interprets the term "conduct charged" in N.J.S.A. 2C:1-3(b) as referring to the actions and state of mind of a defendant that give rise to criminal liability -- not to "the offense charged." The State posits that "the 'conduct charged' is defendant's distribution of the heroin that ultimately killed the victim." Because "distribution of a controlled dangerous substance is a criminal offense in New York," the State submits that "subsection (b) does not apply to negate the State's jurisdiction established under (a)(1)." Last, even if "conduct charged" referred to the drug-induced death offense, the State maintains that subsection (b) would not negate territorial jurisdiction because "the legislative

13

purpose of the drug-induced-death statute makes clear that" its reach extends to wherever "the condemned result occurs."

## III.

Our standard of review is de novo because we are charged with resolving a strictly legal issue. State v. S.S., 229 N.J. 360, 380 (2017). The outcome of this case depends on the meaning of N.J.S.A. 2C:1-3 -- a statute governing territorial jurisdiction -- and on the territorial scope of the strict-liability drug-induced death statute, N.J.S.A. 2C:35-9. In construing those statutes, we owe no deference to the interpretive conclusions of either the trial court or the Appellate Division. See Paff v. Galloway Township, 229 N.J. 340, 351 (2017).

## IV.

New Jersey criminalizes as a strict-liability offense illicitly distributing drugs that cause death to the user. New York does not. If all the acts of drug distribution occurred in New Jersey and the drug user died here, the State would have territorial jurisdiction to prosecute. If all those events occurred in New York, then New Jersey could not assert territorial jurisdiction. The issue here is whether New Jersey has territorial jurisdiction under this State's drug-induced death statute to prosecute Byrd for distributing drugs to Ferguson and

14

Potts in New Jersey and to prosecute Ferguson and Potts for distributing those drugs to Cabral in New York -- the drugs that caused his death.

"[A] first principle of any criminal prosecution is that a State must have territorial jurisdiction to enforce the authority of its laws." Denofa, 187 N.J. at 36. Although "[a]t common law[] a State could prosecute only those crimes committed within its territorial borders," State v. Sumulikoski, 221 N.J. 93, 101 (2015) (citing Model Penal Code and Commentaries, cmt. 1 on § 1.03 at 36 (Am. Law Inst. 1980)), New Jersey's Code of Criminal Justice takes a more expansive approach to territorial jurisdiction, see N.J.S.A. 2C:1-3; see also 2 The New Jersey Penal Code: Final Report, cmt. 1 on N.J.S.A. 2C:1-3 at 5, (Criminal Law Revision Comm'n 1971) (noting that "the Code would somewhat broaden New Jersey's criminal jurisdiction"). However broad the Code's scope of territorial jurisdiction may be, it does not permit the State to prosecute a crime that has no "direct nexus to New Jersey." Sumulikoski, 221 N.J. at 102.

N.J.S.A. 2C:1-3 sets forth six separate pathways to territorial jurisdiction, only one of which is relevant to this case. Subsection (a)(1) of N.J.S.A. 2C:1-3 generally provides that

> a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if . . . [e]ither the conduct which is an element of the

15

offense or the result which is such an element occurs within this State.

Accordingly, if a defendant's conduct or the result of his conduct are elements of the crime charged and if either the conduct or result occurred in New Jersey, the crime is prosecutable in this State, unless one of the exceptions to territorial jurisdiction delineated in N.J.S.A. 2C:1-3 applies.

Ferguson, Potts, and Byrd were charged with violating N.J.S.A. 2C:35-9, the drug-induced death statute. N.J.S.A. 2C:35-9(a) provides, in part, that any person who knowingly or purposely "distributes" certain controlled dangerous substances, such as heroin, "is strictly liable for a death which results from the injection, inhalation or ingestion of that substance, and is guilty of a crime of the first degree."[2] No criminal intent to cause death is required to establish

---

[2] N.J.S.A. 2C:35-9(a) provides in full:

> Any person who manufactures, distributes or dispenses methamphetamine, lysergic acid diethylamide, phencyclidine or any other controlled dangerous substance classified in Schedules I or II, or any controlled substance analog thereof, in violation of subsection a. of N.J.S.A. 2C:35-5, is strictly liable for a death which results from the injection, inhalation or ingestion of that substance, and is guilty of a crime of the first degree.

N.J.S.A. 2C:35-5 sets forth the state of mind requirement for an unlawful distribution: a knowing or purposeful distribution. Heroin is classified in Schedule I as a controlled dangerous substance. N.J.S.A. 24:21-5(d)(11).

16

culpability. A defendant may be found guilty under N.J.S.A. 2C:35-9 even if he "has absolutely no idea that [death] may occur." State v. Maldonado, 137 N.J. 536, 547 (1994). The statute's causation provision, however, mitigates the far-ranging reach of N.J.S.A. 2C:35-9(a). The State must prove not just that the use of the drugs caused the victim's death. N.J.S.A. 2C:35-9(b)(1) to (2). The State must also prove that the victim's death was not "(a) too remote in its occurrence as to have a just bearing on the defendant's liability" or "(b) too dependent upon conduct of another person which was unrelated to the injection, inhalation or ingestion of the substance or its effect as to have a just bearing on the defendant's liability."[3] N.J.S.A. 2C:35-9(b)(2)(a) to (b).

In sum, the elements required to prove a violation of the strict-liability drug-induced death statute are (1) the defendant "distributed" a controlled dangerous substance; (2) the defendant did so knowingly or purposely; (3) the victim used the substance distributed by the defendant; and (4) the victim died as a result of the use of the substance distributed by the defendant, "and the death was not too remote in its occurrence or too dependent upon the conduct

---

[3] Whether a defendant's conduct was "too remote" or "too dependent upon conduct of another person" is a question reserved for a jury that "in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole." See Maldonado, 137 N.J. at 569 (quoting State v. Ingenito, 87 N.J. 204, 212 (1981)); see also N.J.S.A. 2C:35-9(b)(2)(a) to (b).

17

of another person."\ Model Jury Charges (Criminal), "Strict Liability for Drug Induced Deaths (N.J.S.A. 2C:35-9)" (approved Sept. 1997).  Under the drug-induced death statute, the distribution of drugs is a conduct element and the victim's death is a result element for purposes of territorial jurisdiction.  See N.J.S.A. 2C:1-3(a)(1); see also N.J.S.A. 2C:1-14(h).[4]  Based solely on N.J.S.A. 2C:1-3(a)(1), when the distribution occurs in New Jersey and the drug-induced death in another state, the requisites for territorial jurisdiction have been satisfied.

But the Code has exceptions to the general territorial jurisdiction provision of N.J.S.A. 2C:1-3(a)(1).  One such exception is N.J.S.A. 2C:1-3(b), which is patterned after and identically worded to Model Penal Code (MPC) § 1.03(2).  N.J.S.A. 2C:1-3(b) provides:

> Subsection a.(1) does not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result.

---

[4] Under the Code of Criminal Justice, "[e]lement of an offense" is defined in part as "(1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as (a) [i]s included in the description of the forbidden conduct in the definition of the offense."  N.J.S.A. 2C:1-14(h)(a).

That exception was enacted to combat the "danger of injustice [that arises] in situations where the conduct occurs in one jurisdiction, the result in another, and the . . . result is lawful in one and criminal in the other." Model Penal Code and Commentaries, cmt. 3 on § 1.03 at 43. The Model Penal Code Commentaries explain the purpose of the exception:

> When [the] result [prohibited in the forum state] is caused . . . in another jurisdiction that does not share the policy of seeking its prevention, generally the interests of the state where the conduct takes place are not significant enough to warrant application of its penal law. And while it is a valid policy of the community of states to render mutual aid in law enforcement, that policy does not apply if the only state in which the result is threatened does not regard it as sufficiently offensive to condemn the conduct by its penal law.
>
> [Id. at 44.]

Given the policy expressed in N.J.S.A. 2C:1-3(b) and explained in the MPC Commentaries, New Jersey ordinarily would not have a sufficient interest in prosecuting, as a strict-liability crime, conduct in this State that causes a drug-induced death in New York when New York would not prosecute such a crime occurring within its own borders. N.J.S.A. 2C:1-3(b) acts as a restraint on the reach of this State's territorial jurisdiction when one of its criminal laws is not aligned with the public policy of another state, where the result of the conduct is not criminal.

19

Nevertheless, N.J.S.A. 2C:1-3(b) permits New Jersey to prosecute conduct occurring in this State that causes a result in another state, even though the "conduct charged" in this State is not a crime in the other state, provided "a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result." On this point, the MPC Commentaries recognize "that there may be special cases where there is a legislative purpose to declare the conduct criminal regardless of the place of the result and [subsection b] becomes inoperative if such 'a legislative purpose plainly appears.'" Model Penal Code and Commentaries, cmt. 3 on § 1.03 at 44.

No one disputes that Cabral's death -- the result element of the drug-induced death statute -- occurred in New York. The question is whether Ferguson, Potts, or Byrd distributed the drugs in New Jersey -- the requisite conduct element for prosecuting a drug-induced death -- and, if so, whether N.J.S.A. 2C:1-3(b) bars New Jersey from exercising territorial jurisdiction because the "conduct charged" in New Jersey would not be a crime in New York.

V.

We first address whether the State can exert territorial jurisdiction over Ferguson and Potts for causing the drug-induced death of Cabral. See N.J.S.A. 2C:35-9. Because Cabral's death from ingesting heroin occurred in New York

20

(the result element), the only remaining issue for jurisdictional purposes under N.J.S.A. 2C:1-3(a)(1) is whether Ferguson and Potts distributed the heroin in New Jersey (the conduct element). Under the Comprehensive Drug Reform Act of 1987, the term "'[d]istribute' means to deliver . . . a controlled dangerous substance." N.J.S.A. 2C:35-2. In turn, "'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance."[5] Ibid.

As we concluded in State v. Davis, "the [L]egislature intended each of certain specified components of a transaction or episode leading to and including the distribution of a controlled dangerous substance to be a distinct and separate offense." 68 N.J. 69, 78 (1975). "Distribution and possession are distinct criminal offenses, not only in terms of the length of time each lasts, but also in terms of what particular stage of drug trafficking each represents[.]" Id. at 82. Possession pertains to the "retention" of a controlled

---

[5] Before passage of the Drug Reform Act, criminal laws pertaining to controlled dangerous substances were located in N.J.S.A. 24:21-1 to -56, the "New Jersey Controlled Dangerous Substances Act." See N.J.S.A. 24:21-1; see also N.J.S.A. 2C:35-1.1(d). The Drug Reform Act transferred those criminal laws to the Code of Criminal Justice. N.J.S.A. 2C:35-1.1(d); see generally N.J.S.A. 2C:35-1 to -31. The definitions of "distribute" and "delivery" relating to controlled dangerous substances in the Drug Reform Act, see N.J.S.A. 2C:35-2, are essentially identical to those in the New Jersey Controlled Dangerous Substances Act, see N.J.S.A. 24:21-2.

21

dangerous substance, even if in the hands of a seller, whereas "distribution concentrates on the final transfer to a particular party." Ibid.

Additionally, we explained in State v. Ruiz that possession with intent to distribute and distribution of drugs are "demonstrably distinguishable criminal offenses." 68 N.J. 54, 58 (1975). "[A] charge of possession with intent to distribute . . . seeks to condemn the transportation and placement of certain drug substances in the stream of illegal commerce, while an indictment for distribution looks to the final step in drug trafficking -- transfer to someone else." Ibid. The elements and proofs necessary to convict for each offense are not only different, but also the commission of each offense is often separated temporally.[6] See ibid.

At this stage of the proceedings, the grand jury record establishes that Ferguson and Potts possessed heroin with the intent to distribute after they purchased the heroin from Byrd. But the strict-liability drug-induced death statute requires that Ferguson and Potts distributed -- not possessed with the intent to distribute -- the unlawful drugs in New Jersey for territorial jurisdiction to attach. See N.J.S.A. 2C:35-9; N.J.S.A. 2C:1-3(a)(1). We reject the State's strained argument that Ferguson and Potts "distributed" drugs in

---

[6] The discussions in both Davis and Ruiz arise in the context of merger of offenses. Davis, 68 N.J. at 73; Ruiz, 68 N.J. at 55.

22

New Jersey because they possessed heroin in New Jersey and transported it to another state. Ferguson and Potts's purchase and possession of drugs may have been "intrinsic to its ultimate distribution," as the State contends, but that conduct is not the equivalent of distribution. The distribution of drugs focuses on the final transfer to a particular individual. See Davis, 68 N.J. at 82; Ruiz, 68 N.J. at 58.

Ferguson and Potts made no "attempted transfer" or "delivery" of drugs to Cabral in New Jersey. The grand jury record reveals that after they purchased the drugs in Paterson, Ferguson and Potts returned to New York, where they were contacted by Cabral, and where on two successive days they sold drugs and delivered heroin to Cabral, acts that constituted distribution.

Viewing the evidence in the light most favorable to the State at this procedural juncture, the State cannot establish an act of distribution by Ferguson and Potts in New Jersey that would allow the exercise of territorial jurisdiction on the drug-induced death charge. See Denofa, 187 N.J. at 43 (stating that when "there are no facts in the record on which a rational trier of fact could conclude beyond a reasonable doubt that the crime was committed within the State," the court may dismiss the indictment).[7] In the case of

---

[7] When territorial jurisdiction is a contested element of an offense, it "must be found beyond a reasonable doubt by a jury." Denofa, 187 N.J. at 37.

23

Ferguson and Potts, no essential element constituting the crime of causing a drug-induced death occurred in New Jersey. Accordingly, we hold that the Appellate Division properly affirmed the trial court's dismissal of that charge against Ferguson and Potts.[8]

VI.

A.

In the case of Byrd, we reach a different result on the issue of "distribution." The plain language of N.J.S.A. 2C:35-9(a) provides that "[a]ny person who . . . distributes . . . any . . . controlled dangerous substance . . . , in violation of subsection a. of [N.J.S.A. 2C:35-5], is strictly liable for a death" caused by the drug. At the grand jury hearing, the State presented evidence that Byrd distributed to Ferguson and Potts in New Jersey the heroin they later sold to Cabral -- the heroin Cabral ingested causing his death. Therefore, the conduct element of the drug-induced death statute -- distribution of heroin -- occurred in New Jersey, satisfying a key prerequisite for territorial jurisdiction. See N.J.S.A. 2C:1-3(a)(1).

N.J.S.A. 2C:35-9 does not require that a defendant distribute drugs directly to the victim to be found guilty of violating the statute. A defendant

---

[8] New York law enforcement agencies had the authority to charge Ferguson and Potts with distributing heroin to Cabral, but they evidently did not do so.

can be found guilty of causing a drug-induced death even if there are intervening links in the chain between the distributor and the victim. Maldonado, 137 N.J. at 571 (noting that N.J.S.A. 2C:35-9 "is intended to apply to every wrongdoer in the distribution chain"). However, when the links become too attenuated, a jury may determine that the drug-induced death is "too remote in its occurrence" or "too dependent upon conduct of another person . . . as to have a just bearing on the defendant's liability." See N.J.S.A. 2C:35-9(b)(2)(a) to (b); see also Maldonado, 137 N.J. at 569.

The State has satisfied the conduct-element requirement for territorial jurisdiction. See N.J.S.A. 2C:1-3(a)(1). Sufficient evidence in the grand jury record establishes that the heroin Byrd distributed in New Jersey ultimately caused Cabral's drug-induced death, thus rendering Byrd generally subject to this State's territorial jurisdiction under N.J.S.A. 2C:1-3(a)(1).

B.

The only remaining question is whether Byrd's case falls within the exception to territorial jurisdiction delineated in N.J.S.A. 2C:1-3(b). The State cannot exercise territorial jurisdiction when "causing a specified result . . . is an element of an offense and the result occurs . . . in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place

25

of the result."  N.J.S.A. 2C:1-3(b) (emphasis added).  We must review the constituent parts of N.J.S.A. 2C:1-3(b) to determine their applicability to the facts before us.

The parties do not dispute that the "specified result" -- the drug-induced death of Cabral -- is an element of the offense of N.J.S.A. 2C:35-9 or that the "result" occurred in another jurisdiction.  The parties, however, contest the meaning of the words "the conduct charged" in N.J.S.A. 2C:1-3(b).  Byrd claims that the term "the conduct charged" refers to the completed strict-liability crime of a drug-induced death, which is not an offense in New York.  That interpretation would trigger the territorial-jurisdiction exception.  The State, however, posits that the term "the conduct charged" refers only to an element of the offense -- distribution of a controlled dangerous substance, which is a violation of the laws of both New Jersey and New York.  The State's interpretation would nullify the application of the territorial-jurisdiction exception.

We do not agree with the State's textual interpretation because it defies a commonsense reading of the statute.  "Different words used in the same, or a similar, statute are assigned different meanings whenever possible."  In re Expungement Petition of J.S., 223 N.J. 54, 74 n.5 (2015) (quoting 2A Sutherland on Statutory Construction § 46:6 at 261-63 (7th ed. 2007)).  The

26

term "conduct which is an element of the offense" -- the language used in N.J.S.A. 2C:1-3(a)(1) -- is different from the term "conduct charged" -- the language used in N.J.S.A. 2C:1-3(b). The terms are not interchangeable. We must ascribe to the Legislature a reason for using different language in separate provisions of the same statute. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (quoting 2A Sutherland on Statutory Construction § 46:6 at 194 (6th rev. ed. 2000))). In N.J.S.A. 2C:1-3(a)(1), the term "conduct which is an element of the offense" refers to but one element of a completed crime, which is typically sufficient for general territorial-jurisdiction purposes. Distribution is but one element of the drug-induced death statute.

In contrast, the term "conduct charged" suggests a completed crime -- all the elements necessary to constitute an offense. The wording of N.J.S.A. 2C:1-3(b) is "conduct charged [that] would not constitute an offense" in another jurisdiction. In that setting, "conduct charged" is equated with a completed offense, not with a mere element of an offense. All the words in a statute must be given meaning and read in context to reach a sensible interpretation. DiProspero v. Penn, 183 N.J. 477, 492 (2005).

27

We therefore conclude that, here, "conduct charged" means the strict-liability offense of a drug-induced death, N.J.S.A. 2C:35-9. That offense is not punishable as a crime in New York. Therefore, New Jersey does not have territorial jurisdiction "unless a legislative purpose plainly appears to declare" that a violation of N.J.S.A. 2C:35-9 is prosecutable in this State, regardless of the place where the drug-induced death occurred. See N.J.S.A. 2C:1-3(b).

## C.

The Legislature passed the strict-liability drug-induced death statute, N.J.S.A. 2C:35-9, as part of the Comprehensive Drug Reform Act of 1987 (Act). See L. 1987, c. 106, § 1 (eff. June 22, 1987). In its extensive declarations of public policy, the Legislature set forth its many reasons for passing the Act. N.J.S.A. 2C:35-1.1. Those declarations state, in part, that the "manufacture and distribution of controlled dangerous substances continues to pose a serious and pervasive threat to the health, safety and welfare of the citizens of this State"; that "New Jersey continues to experience an unacceptably high rate of drug-related crime, and continues to serve as a conduit for the illegal trafficking of drugs to and from other jurisdictions"; and that "the battle against drug abuse and drug-related crime must be waged aggressively at every level along the drug distribution chain." N.J.S.A. 2C:35-1.1(b) to (c). Furthermore, the Legislature expressed its intention "to provide

28

for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders."  N.J.S.A. 2C:35-1.1(c).

The Act and its declarations clearly express a commitment to battle unlawful drug distribution with an array of new criminal laws and enhanced sentences to promote "the health, safety and welfare of the citizens of this State."  See N.J.S.A. 2C:35-1.1(b) to (d).  The declarations are many and general in nature, but none specifically express an intention to apply the laws of New Jersey extra-territorially -- to criminalize conduct in this State that, further down the chain, causes a result in another jurisdiction where the conduct charged is not a crime.  Under N.J.S.A. 2C:1-3(b), we cannot impute or infer a legislative purpose to prosecute a drug-induced death as a strict-liability offense in New Jersey when the direct distribution to the victim and the drug-induced death occurred in New York, where there is no comparable strict-liability criminal law.  A legislative purpose to extend the statute beyond New Jersey's borders must "plainly" appear.  N.J.S.A. 2C:1-3(b).  That standard is not met if reasonable people can differ about the reach of New Jersey's laws criminalizing events in another jurisdiction -- here, New York -- that does not share New Jersey's policy concerns.  We cannot discern a plain legislative purpose calling for Byrd's prosecution for the strict-liability drug-

29

induced death of Cabral, when New York, where the death occurred, would not prosecute such an offense.

In summary, New Jersey does not have territorial jurisdiction to prosecute Ferguson and Potts for Cabral's drug-induced death because they did not distribute drugs in New Jersey or cause his death in this State. We also hold that New Jersey does not have territorial jurisdiction to prosecute Byrd for Cabral's death because New York has no criminal law punishing as a strict-liability offense the drug-induced death of Cabral and because the Legislature has not plainly indicated a purpose to prosecute Byrd for a N.J.S.A. 2C:35-9 offense in these circumstances.[9]

Last, we note that Ferguson, Potts, and Byrd are subject to multiple remaining counts in the indictment for their drug activity in New Jersey. This appeal resolves only one charge.

## VII.

For the reasons expressed, we affirm the Appellate Division's judgment dismissing the drug-induced death charges against Ferguson and Potts and reverse its judgment upholding the drug-induced death charge against Byrd.

---

[9] We do not address other hypothetical factual scenarios in which a different legislative purpose might possibly be discerned, such as a circumstance where a drug distributor in New Jersey sells heroin to a person in New Jersey, who dies of a drug-induced death in New York.

30

We conclude that New Jersey does not have territorial jurisdiction to prosecute Ferguson, Potts, or Byrd for the drug-induced death of Cabral in New York. We remand to the trial court for the disposition of the remaining charges against Ferguson, Potts, and Byrd.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.